774 So.2d 1076 (2000)
Quiana DAVIS, Plaintiff-Appellee,
v.
DIAMOND SHAMROCK REFINING AND MARKETING COMPANY, Defendant-Appellant.
No. 34,309-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 2000.
*1077 Robert A. Booth, Shreveport, Counsel for Plaintiff/Appellee.
Lunn, Irion, Salley, Carlisle & Gardner by J. Martin Lattier, Shreveport, Counsel for Defendant/Appellant.
Before STEWART, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
Defendant, Diamond Shamrock Refining and Marketing Company ("Diamond Shamrock"), appeals the judgment of the trial court awarding Plaintiff, Quiana Davis, property damages of $2,920.75, which were allegedly caused to her vehicle when she drove it through a car wash owned and operated by Diamond Shamrock. For the reasons stated herein, we reverse.

FACTS AND PROCEDURAL HISTORY
On May 23, 1998, Ms. Davis drove her 1997 Pontiac Firebird through an automated car wash owned and operated by Diamond Shamrock, after having allegedly first asked her passenger, Sherita King, to remove the radio antenna from the vehicle. According to the testimony of Ms. Davis, Ms. King exited the vehicle and, to Ms. Davis' knowledge, removed the antenna. *1078 In her deposition, however, Ms. Davis had previously stated that she was the one who removed the antenna. She testified at trial that, in either case, the antenna was then "chunked in the back seat." The antenna, however, was not produced at trial.
It was Ms. Davis' testimony at trial that, after the car wash cycle began, she heard a "real loud like grinding noise," after which "pressure started applying on the back window" of the vehicle, so she drove the vehicle out of the car wash. Ms. Davis stated that, after she drove the vehicle out of the car wash, she noticed the antenna base had been "ripped out." She said that she then went into the store and reported the incident to the store clerk on duty. Ms. Davis then testified, over Diamond Shamrock's objection to hearsay, that the clerk informed her that the same thing had occurred to her vehicle and to other Pontiac vehicles. The incident report, which was filled out by the store and entered into evidence by Ms. Davis, stated that the antenna had been ripped out, contrary to Ms. Davis' assertion that the antenna had been removed before entering the car wash. She also acknowledged that she had used the same car wash on prior occasions in her mother's vehicle without incident.
Ms. Davis testified that the antenna was a fixed antenna, as opposed to an electric or power antenna. Both property damage estimates introduced into evidence by Ms. Davis, however, reflect that the vehicle had an electric antenna. Bill Carlisle, Diamond Shamrock's expert regarding property damage, testified that it would take over an hour to physically remove an electric antenna from a vehicle and close to an hour to physically remove a fixed antenna.
Mr. Carlisle also confirmed that the repair estimates introduced by Ms. Davis reflected that her vehicle was equipped with an electric antenna and not a fixed antenna as she had previously testified. In Mr. Carlisle's opinion, it is unlikely that both of the repair shops were mistaken in stating in their repair estimates that Ms. Davis' vehicle was equipped with an electric antenna. The mounting for a fixed antenna differs greatly from that for an electric antenna, as does the cost of repair or replacement.
Reuben McInnis, an employee with King Equipment Sales ("King"), the company that performed maintenance on the car wash, also testified on behalf of Diamond Shamrock. Mr. McInnis testified that King was solely responsible for maintenance of the car wash and that the company had inspected this car wash on six occasions between January 1998 and May 1998. It was also his testimony that no problems were detected with the car wash brushes that would have been involved in this alleged incident. Further, the car wash was inspected three days after this incident with no mechanical problems being detected.
Mr. McInnis also confirmed that there was a clearly visible sign in front of the car wash that instructed all patrons to remove or lower car antennas before driving their vehicle into the car wash. He further confirmed that the rear brush of the car wash would tend to get caught on rearmounted antennas and could "snap the antenna off" if it was not removed or lowered. In fact, Mr. McInnis stated he had found broken antennas when he inspected the car wash in the past because people failed to heed the warning. Contrary to Ms. Davis' testimony, Mr. McInnis had not received any information specifically concerning damage to Pontiacs which had been driven through the car wash. In his opinion, Ms. Davis' antenna was up when the incident occurred; and he found no evidence from his inspection that there was a mechanical defect involving the car wash on the date of the incident.
In her petition for damages, Ms. Davis alleged that "despite following all instructions posted for the use of the car wash, including but not limited to removal of her antenna, the car wash, through malfunction, *1079 negligence, defective design, or improper maintenance, forcefully engaged and damaged the back of her vehicle through means of one or more of its moving parts." In her testimony, Ms. Davis acknowledged she knew that her vehicle antenna needed to be removed or lowered before she drove into the car wash. She claimed, however, that there was no visible sign in front of the car wash which informed patrons of this necessity.
A bench trial was had on January 6, 2000, and post-trial briefs were submitted. In a written opinion, the trial court found in favor of Ms. Davis stating it was probable that she failed to lower her antenna, but that the sign so instructing her was "disingenuous." The trial court awarded Ms. Davis $2,920.76 in property damage.

DISCUSSION
The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Lowery v. Savana, 33,384 (La. App.2d Cir.5/10/00), 759 So.2d 1020; Saden v. Kirby, 98-1762 (La.App.4th Cir.4/5/00), 759 So.2d 921. The task of the reviewing court is not to assess whether the trial court's factual findings are right or wrong in an absolute sense, but to ask whether the factfinder's resolution of conflicting evidence was reasonable, in light of the record as a whole. In re-Succession of Shamsie, 33,234 (La.App.2d Cir.5/15/00), 759 So.2d 329. To reverse a factfinder's determination, the reviewing court must conclude that a reasonable factual basis for that finding does not exist in the record. Baker v. Libbey Glass, Inc., 32,748 (La. App.2d Cir.5/10/00), 759 So.2d 1007. An appellate court can reverse a lower court's factual findings when the record reflects that a reasonable factual basis does not exist for the finding and establishes that the finding is clearly or manifestly wrong. LaBove v. Raftery, 99-1414 (La.App.3rd Cir.4/19/00), 759 So.2d 240. Where documents or objective evidence so contradict a witness' story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness' story, the appellate court may well find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Mr. McInnis confirmed that, near the entrance to the car wash, Diamond Shamrock had a visible sign posted which warned patrons of the necessity to remove or lower their antenna to prevent damage. Ms. Davis, however, testified that she did not see such a sign, but knew instinctively that she needed to remove her antenna. Although the trial judge found, as a matter of fact, that the sign was present, he also found that the sign was "disingenuous," stating in oral reasons:
Now I grant you the car wash does have signage out there but at the same time like I said, nobody goes by it. Nobody is going to stop and take their antenna off their car. Even as this witness testified that most of it can't be removed by hand. It takes time. So that sign may be out there but it's uniformly not followed and couldn't be expected to be followed. ...
We find, however that the trial court's focus on the removal of an antenna overlooks the fact that the sign said remove or lower your antenna. This is bolstered by the trial court's factual finding that the damage to Ms. Davis' car was caused by her failure to lower her antenna.
Additionally, the absence or presence of a sign or other warning is not relevant. Ms. Davis testified that she had previously been through the same car wash many times before, without incident, and she knew she had to lower her antenna. In fact, she testified that the antenna was removed. We question Ms. Davis' testimony, however, for the following reasons.
Ms. Davis testified in her deposition that she was the one who got out of the vehicle before entering the car wash and removed *1080 the antenna. At trial, she testified that her passenger, Ms. King, removed the antenna. As evidenced by the incident report, Ms. Davis told the store clerk that her antenna had been "ripped out" by the car wash and both repair estimates showed the antenna to have been damaged. The antenna was not produced at trial, even though Ms. Davis testified that it was "chunked" in the back seat of her vehicle.
There is also Ms. Davis' testimony that her vehicle was equipped with a fixed antenna, although both repair estimates stated the vehicle was equipped with an electric antenna.
The trial court found it to be an electric antenna, stating:
... now, I have to admit two body shops looked at this vehicle and said electric antenna. And they've got in depth ... appraisals here or estimates of the damage and the repairs they've got to make, both Brock's and Shouse .... so I'm inclined to say that the people who know the business found it was an electric antenna. Which would then lead me to say no, Miss Davis and her friend couldn't have taken the antenna off. They may have inadvertently left it up....
Ms. Davis introduced two repair estimates at trial, one from Shouse Collision Center, Inc. totaling $4,470.70 and one from Brock Auto Mall Collision Repair totaling $2,920.76. Although the trial court awarded Ms. Davis the lower of the two estimates, both contained charges for repairs other than the antenna and spoiler (The spoiler is the curved, molded plastic or fiberglass protrusion on the rear body of the vehicle, just ahead of the antenna.) Ms. Davis acknowledged at trial that both estimates and the recovery she was seeking included the cost of replacement of two wheels, refinishing both doors, replacing both side view mirrors, replacing both door handles and polishing roof scratches, as well as replacement of the antenna and antenna mount and repairing and refinishing the spoiler. No testimony or evidence was adduced at trial concerning the alleged damages other than the antenna and spoiler. In fact, the incident report introduced by Ms. Davis listed only the antenna and spoiler as damaged. In his opinion, the trial judge incorrectly stated that the damages being awarded were supported by the photographs in exhibit D-3. Exhibit D-3, however, does not include any photographs of Ms. Davis' car.
In awarding Ms. Davis the full cost of the estimated repairs, the trial court implicitly included those other listed items as part of the damage caused by this alleged incident. We find on this record, however, that in so finding, the trial court committed manifest error and was clearly wrong. We further find that the damage allegedly occasioned to Ms. Davis' vehicle is limited solely to the antenna and the spoiler.
La. C.C. art. 2317 states:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
In 1996, the legislature added La. C.C. art. 2317.1 as a modification of the strict liability presented by La. C.C. art. 2317. La. C.C. art. 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
By adding La. C.C. art. 2317.1, the legislature added the element of knowledge, abrogating the application of strict liability to damage caused by defects *1081 in things in a person's custody. Both theories, however, require proof that the defendant had custody of the thing causing the injury; that it contained a defect, that is, a condition creating an unreasonable risk of harm; and that the defective condition caused plaintiff's injury. Collins v. Whitaker, 29,324 (La.App.2d Cir.4/2/97), 691 So.2d 820.
It is not disputed that the first element is met in that Diamond Shamrock owned the car wash. We disagree, however, with the trial court's finding that the "disingenuous" nature of the sign, coupled with Mr. McInnis' testimony that he sometimes found broken antennas when inspecting the car wash, created an unreasonable risk of harm.
Mr. McInnis testified that the rear brush of the car wash is prone to become entangled in a rear-mounted antenna if a patron fails to lower or remove it. The presence of broken antennas in the car wash, therefore, only indicates that patrons have failed to heed the warning sign posted by Diamond Shamrock. Mr. McInnis testified that all Ms. Davis would have needed to have done was lower her antenna, which could easily have been accomplished by simply turning off her radio. By doing so, Ms. Davis would have removed the antenna from harm's way and prevented any damage to her vehicle.
See Lee v. Vidrine, 316 So.2d 402 (La. App. 3rd Cir.1975), in which a car wash patron is barred from recovery for damages he allegedly sustained when he was struck by a flailing spray gun nozzle. The court found that the patron failed to adhere to instructions posted on a clearly visible sign, relative to the operation of the manual spray gun. The court found that the car wash owner had a right to assume that patrons would follow the clearly posted instructions.
Given the internal inconsistencies in Ms. Davis' testimony and the contradiction by other evidence, on this record, we do not find that the car wash presented an unreasonable risk of harm. The trial court committed manifest error and was clearly wrong in finding to the contrary. Having made this finding, any discussion concerning allocation of fault or the amount of damages is pretermitted.

DECREE
For the foregoing reasons, the judgment of the trial court awarding damages in favor of Plaintiff, Quiana Davis, is reversed. All costs are assessed to Plaintiff, Quiana Davis.
REVERSED.