786 So.2d 170 (2001)
Carmen MARTINEZ,
v.
Patricia F. COLEMAN, Lotus Realty and Tricia Roop.
No. 00-CA-1827.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2001.
*171 Matthew J. Ungarino, David I. Bordelon, Metairie, LA, Attorneys for Plaintiff/Appellant.
David K. Persons, Alayne R. Corcoran, Metairie, LA, Attorneys for Defendants/Appellants.
Panel composed of Judges GOTHARD, ROTHSCHILD, and SCHOTT, Pro Tempore.
GOTHARD, Judge.
Plaintiff herein, Carmen Martinez, appeals a judgment in which the trial court found in favor of defendants and dismissed plaintiffs action. For reasons that follow, we affirm.
This matter began with the filing of a petition for damages sustained by plaintiff when she slipped on water that flowed onto the floor of her apartment from a toilet that overflowed. Plaintiff named the corporate owner of the apartment, its agents, and a fellow tenant of the building as defendants. After a bench trial, the court took the matter under advisement. Subsequently, the court rendered judgment in favor of defendants finding that "plaintiffs accident did not occur as a result of any fault on the part of defendants". It is from that judgment that plaintiff appeals.
At trial, plaintiff testified that in March of 1998 she awoke in the early morning hours and went downstairs to get a glass of water. She stepped in water in the hall. As she reached for the light, she slipped and fell on her back, hitting her head. She testified that the floor was dry when she went to bed earlier that evening. However, she has had problems previously with toilet overflow and water on the floor.
Ms. Martinez described her apartment, which is located at 4341 Idaho Avenue, in Kenner, Louisiana, as a two story dwelling which is divided into four apartments. She had lived in that apartment for about four years prior to the date of the accident. The first floor of the apartment consists of a living room, dining room, kitchen, laundry room and bathroom.
After the fall, Ms. Martinez and her daughter cleaned up the water. In the morning, Ms. Martinez called her landlord, Bob Coleman, to inform him of the water and the resulting fall. At that time Mr. Coleman assured Ms. Martinez that he was aware of the condition and was sending a plumber over as soon as possible. When Ms. Martinez returned home from *172 work that evening, the plumber had completed the necessary repairs.
Ms. Martinez related previous problems with the plumbing. She stated that on one occasion there was a leak in the laundry room which had to be repaired. She stated that three or four months prior to the accident there was water on the floor which required a plumber, but she could not recall the cause.
Ms. Martinez testified to the injuries sustained in the fall. She described several months of diagnostic testing and treatment for back pain which was verified by the testimony of treating physicians. The pain made her job as a beautician difficult to endure. The back condition made it necessary for Ms. Martinez to change employers in order to secure a less physically taxing job.
Mr. Martinez's daughter, Karla Fennel, testified at trial. Her testimony corroborates that of her mother.
Ms. Patricia Roop, who lives in the apartment adjoining Ms. Martinez's, testified that in March, 1998 she had problems with her plumbing when it rained. She would often experience backup in her kitchen sink and occasionally in the toilet, although the toilet only overflowed onto the floor once. There is a common wall between Ms. Roop's bathroom and Ms. Martinez's bathroom. Ms. Roop testified that she reported the backup problem to Mr. Coleman, but he did not always respond. Ms. Roop also testified that she had a leak in her laundry room, which was repaired the same day as it was reported.
Mr. Nicholas Meyer, a professional plumber, testified for the defense. He stated that he was called out to 4341 Idaho Avenue to unstop a drain on March 24, 1998. He testified that the building is a four-plex which has a main line coming out of the front of the building into which all four apartments drain. The main clean out is in the rear of the building. He opened the main clean out and ran a line from the back of the building all the way to the street to clear the line. He explained that because all apartments are on the same main line, something flushed down a toilet in one apartment which causes a clog could affect the drainage in the other apartments.
Mr. Meyer testified that the work order for that date contained the instruction that he was to "get out there on Wednesday, ASAP". Mr. Meyer stated that this was his first job of the day. He ran a "snake" completely through the line and found some paper towels and sanitary napkins which were causing the clogged drain. Mr. Meyer testified that the debris found in the line could have come from any one of the four apartments. He further testified that there was nothing the owner of the property could have done to prevent the problem, and that it is not the normal practice to run a sewer clean out as a preventive measure. Meyer testified that he was called to the property three or four months earlier to unclog a kitchen drain, but that was unrelated to the March, 1998 incident at issue herein.
Mr. Meyer testified that there is nothing different or defective about the sewer lines in this building. The only reason the toilet backed up and overflowed onto Ms. Martinez's floor is because someone in one of the apartments flushed sanitary napkins and paper napkins down a toilet.
After considering all of the evidence and testimony, the trial court took the matter under advisement. Subsequently, the trial court ruled that the plaintiffs injury was not due to the fault of the defendant and dismissed plaintiffs case.
*173 In brief to this court, plaintiff asserts that a defect in the plumbing caused the accident in which she was injured. Accordingly, the standard of care owed by the defendant is strict liability pursuant to LSA-C.C. article 2695. Further, plaintiff argues that the lease signed by the parties did not relieve defendant of liability because the defect occurred outside of the leased premises.
LSA-C.C. article 2695 provides:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
However, the liability of the lessor can be shifted to the lessee pursuant to LSA R.S. 9:3221 which provides:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
In the case at bar, the lease signed between the parties contains the following clause:
Lessee assumes responsibility for the condition of the premises. Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes by freezing or otherwise, or any vices or defects of the leased property, or consequences thereof, except in case of positive neglect or failure to take action toward the remedying of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
Plaintiff does not argue that the above clause is invalid, or does not comply with LSA-R.S. 9:3321. Rather, plaintiff argues that the clause is inapplicable to this case because the clog in the drain line which caused the injury was outside of her control. The plaintiff further argues that the matter should be decided solely under the law set forth in LSA-C.C. article 2695. Plaintiff asserts that pursuant to that article, notice is unnecessary. Plaintiff maintains that only a showing that there was a defect and that the defect caused the injury is sufficient to hold defendant liable for her injuries.
We note first that there was not a sufficient showing that a defect, as defined in our law, existed. Clearly proof of a defect in the property is an essential element of liability pursuant to LSA-C.C. article 2695. The lessee must prove there was a defect in the premises which caused the damage. Freeman v. Julia Place Limited Partners, 95-0243 (La.App. 4 Cir. 10/26/95), 663 So.2d 515, 519. A defect has been defined as a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Id.
While plaintiff makes the assertion that a sewer line which drains four apartments is a defect in the premises, she offered no evidence at trial to support that theory. In fact, the only evidence in that regard proved the opposite. Defendant's expert, the plumber who unclogged the drain, testified *174 that the plumbing was normal and not defective in any way. According to Mr. Meyer's testimony the flooding in plaintiffs apartment was caused by one of the four apartment residents flushing inappropriate material down the toilet, causing the drain to clog up and overflow. Plaintiff offered no testimony or evidence to refute that testimony.
The only evidence offered by plaintiff with regard to the condition of the plumbing was testimony from plaintiff that she once had a leak in the laundry room and occasionally other leaks, although she could not recall the cause. Also, a second resident of the building testified that her sink backed up on some occasions and her toilet overflowed once.
It appears from the trial court ruling, that the trial judge found Mr. Meyer's testimony, that there was no defect in the plumbing, credible. Whether defendant's liability is based on LSA article 2695 or R.S. 9:3221, a defect in the premises must be shown. See; Robinson v. Archdiocese of New Orleans, 98-1238 (La.App. 4th Cir.3/31/1999), 731 So.2d 979.
On review, even holding defendant to the higher standard of LSA C.C. article 2695, we find the ruling of the trial court, that defendant could not be held liable in this matter, to be correct. Accordingly, we affirm the trial court.
AFFIRMED.