845 So.2d 1128 (2003)
Lynne COCHRAN, et al.
v.
SAFEGUARD SELF-STORAGE, INC. and Republic Western Insurance Company.
Suzanne Gioiello, et al.
v.
Safeguard Self-Storage, Inc. and Republic Western Insurance Company.
Floris Verda, Wife of/and Vincent Verda and John Marquez
v.
Safeguard Self-Storage, Inc. and Republic Western Insurance Company.
Nos. 02-CA-1272, 02-CA-1273, 02-CA-1274.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2003.
*1129 Phillip T. Hager, Metairie, LA, for Appellants.
Lindsay A. Larson, III, George B. Jurgens, III, T.A., New Orleans, LA, for Appellees.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Plaintiffs/Appellants appeal from the trial court's judgment in favor of defendants, granting the defendants' Motion for Summary Judgment. For the following reasons, we affirm.
Plaintiffs leased storage space from defendant, Safeguard Self-Storage, Inc., in building D of facility No. 11 at Safeguard's Kenner location in Jefferson Parish. The respective leases for storage provided for the non-liability of Safeguard for property stored unless "due to the willful acts of gross negligence of (Safeguard Self-Storage), his agents, servants, or employees." The lease further excluded all warranties by Safeguard, and specified that any insurance obligation was the occupant's sole responsibility.
On July 8, 1997, the owner of Safeguard, Bruce Roch, noticed that the lights in Building D were not functioning properly. After investigating, he determined that the circuit breaker in the junction box had been tripped, and would not resume the "on" position. Accordingly, he made a service call to Marvin Electric Company, who sent an electrician, Marvin Stein, to detect the source of the problem. Stein observed that two wires behind an electrical outlet near the rear of the building had shorted out because of an overload in the outlet. Stein then repaired the affected portions of the wiring and placed a plate over the outlet to prevent further use. Stein did not observe any other electrical difficulties, nor did he indicate to Roch that there was a problem with the building's wiring.
On October 8, 1997, a fire in building D of the Safeguard facility destroyed plaintiffs' property. An investigation by the Jefferson Parish Arson Investigative Unit concluded that the fire was accidental and had likely originated at an electrical junction box within the northwest section of the building. The investigator also concluded that there was no visible indication of an electrical fault within the junction box and wiring. The junction box was not part of the plaintiffs' leased premises.
Lessees of Safeguard filed several suits in the Twenty-Fourth Judicial District Court for the Parish of Jefferson against Safeguard Self-Storage, Inc, and Republic Western Insurance Company, Safeguard's insurer ("defendants").[1] On December 15, 1998, defendants filed an ex parte motion for consolidation of all property damage lawsuits, and the trial court granted defendants' motion on that same day. Thereafter, plaintiffs filed a Motion To Amend and Supplement their petition, in order to add several more defendants.[2]
*1130 On May 31, 2000, Safeguard filed a Motion for Summary Judgment seeking dismissal of all plaintiffs' claims. The trial court granted Safeguard's motion on July 19, 2002, entering final judgment on August 1, 2002. Plaintiffs timely filed the present appeal.

LAW AND ANALYSIS
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[3] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: Whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[4] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[5] There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[6] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A material fact is one that would matter on the trial of the merits.[7]
Plaintiffs first argue that the trial court erred in failing to apply a strict liability standard in deciding the Motion for Summary Judgment. In their second assignment of error, plaintiffs assert that the trial court erred in finding that the defendants did not know or should have known of the defects in the wiring that caused the fire. Finally, plaintiffs argue that the trial court erred in finding that the defendants took reasonable steps to remedy any defects in the wiring within a reasonable period of time.
In 1996, the legislature adopted Civil Code article 2317.1, accompanied by an amendment to Civil Code article 2322, which created fundamental changes to the burden of proof in strict liability.[8] A plaintiff alleging negligence under strict liability now has to prove the following elements: (1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that defendant failed to exercise such reasonable care.[9] The addition of knowledge as an element has effectively eliminated strict liability in most circumstances.[10]
La. C.C. art. 2317 states, in relevant part:

*1131 We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
La. C.C. art. 2317.1 further states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
La. C.C. art 2322 provides:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
La. C.C. art. 2695 provides:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
At trial on the Motion for Summary Judgment, the trial court indicated that it was granting defendant's motion based upon LSA R.S. 9:3221, which reads:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
It is not disputed that the plaintiffs in this case, by signing the rental agreement contract with defendant, assumed sole risk for items stored at the facility, unless damage or loss occurred from the willful acts or gross negligence of the defendant. Plaintiffs argue, however, that LSA R.S. 9:3221 is not applicable to "damages incurred by the lessee resulting from a defect in the property which was not a part of the leased premises" over which the lessee had no supervision or control. Specifically, citing cases such as Dorion v. 1111 Building,[11] plaintiffs assert that "common areas" of a leased premises are under the control of a landlord and therefore are not under the purview of LSA R.S. 9:3221.
In Dorion, supra, the plaintiff sustained injuries resulting from a slip and fall accident in a building owned by Eleven Eleven Building and leased by Dorion Advertising and Public Relations Agency, Inc. The accident occurred at the entrance of the leased premises. The court found that the common area was the responsibility of the landlord, noting:
When the common accessory, such as a stairway, is under the control of a *1132 lessor, the lessee can maintain an action for damages flowing from the injury caused by the defect in the accessory, notwithstanding his contractual assumption of responsibility for defects in the leased premises. Ostrander v. Parkland Villa Apartments, 511 So.2d 1293 (La.App. 2 Cir.1987).
. . .
In effect, the courts of this state have consistently treated common areas the same way that they treat non-leased premises, i.e., the landlord is not entitled to claim the exculpatory benefits of La. R.S. 9:3221. There is no contrary authority. The rationale for this conclusion is that no single individual tenant normally assumes exclusive responsibility for the care and maintenance of common areas.[12]
Plaintiffs analogize the Dorion case to the present facts to the extent that in the present case the fire originated in an area not leased by them.
We find the principles outlined in Dorion to be applicable, and agree with plaintiffs that the trial court erred in failing to apply a strict liability standard in this case, based upon our finding that the plaintiffs did not intend to assume liability over the areas of the building not covered by their lease. After a review of the record, however, we cannot say that the trial court erred in finding that the defendant did not know or should have known of the vice or defect that ultimately caused the fire, an essential element to hold a property owner strictly liable.
In this case, the trial court summarized the facts upon which it determined that Safeguard did not have notice of a potentially hazardous situation on its property:
The undisputed facts in this case are that in July, 1997 there was an electrical difficulty. Mr. Roth [sic] called Mr. Stein, a Certified Electrician to come remedy the problem. Mr. Stein took certain actions and reported to Mr. Roth [sic] that he had done the appropriate inspection; determined the cause of the problem, and resolved the cause of the problem. That was the notice Mr. Roth [sic] had, the fact of July, 1997. The undisputed evidence is that between July 1997 and October, 1997, at the time of this unfortunate fire, which may have well been caused by some major electrical difficulty. Mr. Roth [sic] hadthere were no further circuit breaks. There is no evidence that Mr. Roth [sic]that anything else occurred on the premises to give Mr. Roth notice anew that there as an electrical difficulty ...
[I]n this case-in July Mr. Roth [sic] was put on notice. In response to that notice Mr. Roth [sic] took a specific action. That action was the calling of a Certified Electrician; which is the common sense action, which would be expected of any homeowner, commercial or otherwise. And Mr. Roth [sic] received information that the problem had been corrected. There was no other reasonable actions for Mr. Roth [sic] to take at that time ...
Further, I find that there are no material issues of fact. That on the fact, clear and unequivocally Mr. Roth [sic] did not know or should he have known of the defect. He had not received notice. And with regard to the previous notice he had received, he had within a reasonable period of time taken appropriate act (sic) to remedy the situation.
Plaintiffs take issue with the trial court's findings in several respects: They assert that the electrical problem of July 3, 1997, in and of itself, was sufficient to place Roch on notice that there were potential electrical problems elsewhere in the wiring, especially when taking into account *1133 the explanation of the electrical problem to both Roch and his manager by Stein; the failure of Stein to inspect any other wiring in the building; the known factors that can cause an overload that results in fire, and; Roch's failure to report the electrical fire which would have resulted in a mandatory inspection.
The electrician who serviced the Safeguard building in question, Thomas Stein, provided that following narrative in his deposition: In trying to determine the electrical problem, he found a tripped circuit at the electrical box. He tried to throw the switch and it tripped again. Stein then testified that the electrical problem was traced back to an outlet. He pulled wire out of the outlet and observed that it appeared that the wire had overheated. Stein then replaced the wire and made a new junction box, after which he placed a blank plate over the suspected outlet to prevent further use. Stein concluded that an overload of the outlet over time had caused the wire to overheat. Stein did not advise Roch or his manager that there was a problem with wiring in the building, and, in fact, concluded that after he made repair to outlet there was no problem with the wiring.
Based on this testimony, we find that the trial court's conclusion that there was no further notice to Safeguard of a vice or defect is supported by the record.
We further find that the trial court did not err in concluding that defendants took reasonable steps to remedy the defects within the wiring within a reasonable time. In his deposition, Roch states that he contacted Marvin Electric on the same day he noticed the problem with the lights. He further relied upon the assertion by Stein that the problem had an overloaded circuit had been repaired. There was no further indication of an electrical problem between when the circuit was repaired and when the fire occurred.
Finally, plaintiffs argue that actions Roch could have taken as a means to possibly prevent the fire constitute genuine issues of material fact. Argument of counsel and briefs, however, no matter how artful, are not sufficient to raise a genuine issue of material fact,[13] and allegations without substance will not support a summary judgment.[14] As previously stated, we find that the trial court did not err in its conclusion that there was no issue of material fact regarding whether Roch had no prior knowledge of a defect in the premises, and therefore the summary judgment was properly granted.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Lynne Cochran and Philip Hagar filed suit on October 2, 1998; Suzanne and Philip Gioiello filed suit on October 5, 1998; Floris and Vincent Verda, and John Marquez filed suit on October 8, 1998. Dennis Bass had also filed suit, but did not appeal the final judgment in favor of appellees. All claimed property damage as a result of the fire.
[2] The additional defendants were: Safeguard Self-Storage Management Services, Inc., Safeguard No. 11 partners, L.L.C. and/or Safeguard 11, L.L.C., Dorothy Virginia Harrison, wife of/ and Bruce C. Roch and/or Bruce C. Roch, Sr. and Bruce C. Roch, Jr. and Marvin Dushan d/b/a Marvin Electric Company ("Marvin Electric").
[3] Bua v. Dressel, 96-79 (La.App. 5th Cir.5/28/96), 675 So.2d 1191; writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348; citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
[4] Tassin v. City of Westwego, 95-307 (La.App. 5th Cir.12/13/95), 665 So.2d 1272.
[5] Rowley v. Loupe, 96-918 (La.App. 5th Cir.4/9/97), 694 So.2d 1006.
[6] Id. at 1008.
[7] J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5th Cir.2/14/96), 670 So.2d 1305.
[8] Greenhouse v. C.F. Kenner Associates Ltd. Partnership, 98-0496 (La.App. 4 Cir. 11/10/98) 723 So.2d 1004.
[9] Id.
[10] Id.
[11] XXXX-XXXX (La.App. 4 Cir. 5/12/99), 737 So.2d 878.
[12] Id. at 881.
[13] Attardo v. Brocato, 96-1170 (La.App. 4 Cir. 2/5/97). 688 So.2d 1296, writ denied 97-0584 (La.4/18/97), 692 So.2d 453.
[14] Davenport v. Amax Nickel, Inc., 569 So.2d 23, 27 (La.App. 4th Cir.1990), writ denied, 572 So.2d 68 (La.1991).