870 So.2d 490 (2004)
Ralph T. BARNES, Plaintiff-Appellant,
v.
RIVERWOOD APARTMENTS PARTNERSHIP and the City of Monroe, Defendants-Appellees.
No. 38,331-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
*492 Bruscato, Tramontana & Wolleson by Anthony J. Bruscato, Monroe, for Appellant.
Hudson, Potts & Bernstein, L.L.P., by Mark J. Neal, Charles W. Herold, III, Monroe, for Appellees Riverwood Apartments Partnership and Shelter Mutual Insurance Co.
Nancy S. Summersgill, Assistant City Attorney, for Appellees City of Monroe and Monroe Regional Airport.
Before STEWART, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
In this personal injury action, Plaintiff, Ralph T. Barnes, appeals a judgment of the trial court granting summary judgment in favor of Riverwood Apartments Partnership ("Riverwood"), its insurer and the City of Monroe. For the reasons stated herein, we reverse and remand the matter to the trial court for further proceedings.

FACTS
At the time of his injury that forms the basis of this lawsuit, Mr. Barnes was a tenant in the Riverwood Apartments in Monroe, Louisiana.[1] While walking across the common area of the apartment complex to a designated drop-off site for canned food donations, Mr. Barnes stepped in a hole and sustained injuries to his legs. The hole was created by a washing away of soil near a drainpipe and, apparently, was not readily visible because of the turf that continued to grow over the top of the hole. As a result of the damages sustained, Mr. Barnes sued Riverwood, its insurer and the City of Monroe.[2] Mr. Barnes filed a motion for summary judgment and a motion to determine applicable law regarding whether the jury should be charged with the option of finding for the plaintiff on the basis of strict liability or whether the only theory of recovery allowed should be negligence. Riverwood responded to the motion to determine applicable law and filed its own motion for summary judgment. Mr. Barnes argued that La. C.C. art. 2695 applies because a landlord is strictly liable for injuries caused to a tenant by defects in the premises. Article 2695 states as follows:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
*493 Riverwood argued that the only theory available to Mr. Barnes was negligence and that it was not on notice of the hole because it was not readily visible due to the grass growing over the cavity. Alternatively, Riverwood contended that, if the hole was visible, it is not liable because Mr. Barnes was at fault for failing to see and avoid the hole. Riverwood also argued that the legislature implicity repealed article 2695 with the enactment of 2317.1 (part of the 1996 tort reform legislation). Articles 2317 and 2317.1 state as follows:
Art. 2317. Acts of others and of things in custody
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
Art. 2317.1. Damage caused by ruin, vice, or defect in things
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Mr. Barnes countered that the legislature was aware of article 2695 and did not intend to repeal it, noting that amendments to other tort reform articles have not been held to have affected article 2695 and that landlords have since been held strictly liable for injuries caused by defects in the property.
The trial court went an entirely different route, finding that article 2695 does not apply in this case because of paragraph seven of the lease agreement, which reads as follows:
"Should Lessor permit Lessee, his family, servants, or visitors to use any storeroom, laundry, swimming pool, recreation area, parking lot, or any other facilities in addition to the leased premises, or should Lessee use such facilities without consent of Lessor, such use shall be entirely gratuitous and wholly at the risk of the person involved, and Lessor shall not be liable for any injury to persons or loss or damage to property resulting from such use." (Emphasis by trial court.)
The trial court concluded that, since the hole in which Mr. Barnes stepped was in the common area of the apartment complex, it was not a part of the "thing" leased for article 2695 purposes. The trial court stated that, for article 2695 to apply, Mr. Barnes would have to have been injured by a defect in the apartment itself, as it was the "thing" leased. Accordingly, Mr. Barnes' motion for summary judgment was denied. After noting that there was a question of liability in this case under articles 2317 and 2317.1, the trial court concluded that Riverwood had no notice of the hole under those articles and granted its motion for summary judgment. This appeal ensued.

DISCUSSION
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there *494 is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Although the initial burden in summary judgment remains with the mover to show that no genuine issue of material fact exists, once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Estate of Levitz v. Broadway, 37,246 (La. App.2d Cir.5/14/03), 847 So.2d 170. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507 (La.12/8/00), 775 So.2d 1049. The court must draw those inferences from undisputed facts that are most favorable to the party opposing the motion for summary judgment. Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226; Estate of Levitz v. Broadway, supra.
Post tort reform viability of La. C.C. art. 2695
The central issue in this case concerns the post-tort reform viability of La. C.C. art. 2695. Specifically, we must decide whether the enactment of La. C.C. art. 2317.1 implicitly repealed article 2695. We find that article 2695 was unaffected by article 2317.1 and that the strict liability theory embodied in article 2695 remains a theory of recovery for plaintiffs in situations such as the one presented in the case sub judice.[3]
Under article 2695, a lessor guarantees his lessee against all vices and defects of the thing leased. This provision is found in the chapter of the civil code entitled Of the Obligations and Rights of the Lessor, and governs specifically the rights between lessors and lessees. In contrast, articles 2317 and 2317.1 are located in the chapter of the civil code entitled Obligations Arising Without AgreementOf Offenses and Quasi Offenses. Prior to the 1996 tort reform legislation, article 2317 provided for strict liability in a much broader setting, i.e., an owner or custodian of a thing was strictly liable for damages occasioned by that thing. The 1996 enactment of 2317.1 added a notice or knowledge component to 2317, effectively changing liability in this particular area from strict liability to negligence. We believe that article 2317.1 was intended only to affect its immediate predecessor in number, article 2317, and we can find no authority or evidence that would suggest otherwise. As recently as 2001, Chief Justice Calogero expressed his concurrence with this conclusion, stating that article 2317.1 "does not impinge upon the lessee's cause of action in strict liability against the lessor *495 under La. C.C. art. 2695." See Driscoll v. Provenzano, 01-1115 (La.6/1/01), 793 So.2d 201, J. Calogero, concurring.
In addition, we find no irreconcilable conflict between article 2695 and articles 2317 and 2317.1 as Riverwood suggests and no indication that the legislature intended to repeal all forms of strict liability with the 1996 tort reform legislation. La. C.C. art. 8 provides, in pertinent part:
Laws are repealed, either entirely or partially, by other laws. A repeal may be express or implied. It is express when it is literally declared by a subsequent law. It is implied when the new law contains provisions that are contrary to, or irreconcilable with, those of the former law.
It is well settled in the jurisprudence, however, that repeals by implication are not favored. Jordan v. Louisiana Gaming Control Board, 98-1122 (La.5/15/98), 712 So.2d 74 citing Thomas v. Highlands Ins. Co., 617 So.2d 877 (La.1993); State v. Piazza, 596 So.2d 817 (La.1992); In re Robin Sapia, 397 So.2d 469 (La.1981); Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 (La.1974); State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601 (1937). As such, a repeal by implication will be found only where there is an irreconcilable conflict between two statutes and where there exists no possible construction that could give both statutes effect. Id. As previously stated, article 2695 deals specifically with landlord/tenant relationships, whereas the more general articles 2317 and 2317.1 govern liability for damages arising out of a thing owned. These provisions can be easily harmonized and present no conflict that would lead us to conclude that the enactment of article 2317.1 implicitly repealed article 2695. Furthermore, there is post-1996 jurisprudence recognizing and applying article 2695. As recently as 2002, the third circuit applied and explained article 2695 and the plaintiff's burden of proof thereunder as follows:
[Article 2695] applies to the lease of both immovables and movables. A defect, for purposes of Art. 2695, has been defined as "a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances." To recover under Art. 2695, it is not necessary to prove the cause of the defect. A lessee must prove only the existence of the defect. In order for a lessee to recover damages from the lessor under this article due to an alleged vice or defect in the leased premises, the lessee must prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance if, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not may be proved by circumstantial evidence, and that evidence need not negate all possible other causes, but it must exclude other reasonable hypotheses with a fair amount of certainty. (Internal citations omitted.)
Marien v. General Insurance Company of America, 02-545 (La.App. 3d Cir. 12/11/02), 836 So.2d 239, writ not considered, 03-0578 (La.5/9/03), 843 So.2d 384, writs denied, 03-0474, 843 So.2d 396 (2003), 0513 (La.5/9/03), 843 So.2d 397; see also Martinez v. Coleman, 00-1827 (La.App. 5th Cir.4/24/01), 786 So.2d 170. We conclude that article 2695 strict liability was unaffected by the 1996 tort reform legislation.[4]
*496 Applicability of La. C.C. art. 2695 to the case subjudice
The trial court concluded that the common area where the hole was located in this case did not fall within the confines of the thing leased for article 2695 strict liability. We disagree. Strict liability under article 2695 has consistently been applied by Louisiana courts to all portions of leased property, including areas not under the control of the lessee such as common accessories which are used by multiple tenants. Thiel v. Kern, 34 So.2d 296 (La.App.1948)(staircase); Ostrander v. Parkland Villa Apartments, 511 So.2d 1293 (La.App. 2d Cir.1987)(stairway); Wexler v. Occhipinti, 378 So.2d 1073 (La. App. 4th Cir.1979)(walkway), writ denied, 381 So.2d 1232 (La.1980); Wilson v. Virgademo, 258 So.2d 572 (La.App. 4th Cir. 1972)(steps); Abbott & Barnes Credit Clothiers, Inc. v. Crane Clothing Company, 141 So.2d 916 (La.App. 4th Cir.1962); Estes v. Aetna Casualty & Surety Co., 157 So. 395 (La.App.Orleans 1934)(passageway). We find no support in the law for the argument that the common area where the hole was located in the case subjudice was an area not contemplated under article 2695 and, therefore, we conclude that the trial court's finding in that regard was erroneous. Article 2695 strict liability was appropriately pled and argued in this case.
The lessor's guarantee under article 2695, however, is subject to exception as provided in La. R.S. 9:3221, which states as follows:
3221, Assumption of responsibility by lessee; liability of owner
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
La. R.S. 9:3221, however, does not apply to damages resulting from defects in the property "over which the lessee has no supervision or control." Ostrander, supra, *497 and cases cited therein. In Ostrander, the plaintiff was injured on a stairway of the apartment complex. Despite a clause of contractual assumption of risk contained in the lease agreement, this court held:
Louisiana jurisprudence has consistently acknowledged the tenant's right to use and enjoy not only the premises but also the common accessories of the leased premises. When a common accessory is under the control of the lessor, the tenant can maintain an action for damages flowing from an injury caused by a defect in the accessory notwithstanding his contractual assumption under La. R.S. 9:3221.
See also Dorion v. Eleven Eleven Buildings, 98-3018 (La.App. 4th Cir.5/12/99), 737 So.2d 878; Abbott & Barnes Credit Clothiers, Inc., supra. We find, therefore, that any exculpatory clause in the lease agreement in the case sub judice is irrelevant, as a tenant cannot, under Ostrander, contractually assume liability for the common areas of an apartment complex. For this reason, we need not discuss in detail the trial court's reasons for application of the exoneration clause contained in paragraph seven of the lease agreement. This court's review is of the judgment of the trial court, not the reasons for judgment. Longoria v. Brookshire Grocery Co., 37,975 (La.App.2d Cir.12/19/03), 862 So.2d 1172; Hoskins v. Hoskins, 36,031 (La. App.2d Cir.4/5/02), 814 So.2d 773.
In summary, Mr. Barnes has a viable claim of strict liability under article 2695, which, since his injury resulted from an alleged defect in a common area of the apartment complex, is unaffected by the exception contained in La. R.S. 9:3221. Accordingly, summary judgment was improperly granted.
Potential liability under La. C.C. arts. 2317 and 2317.1
Having decided that Mr. Barnes has a strict liability claim under article 2695, we also note that plaintiffs like Mr. Barnes are not limited to actions under article 2695, but, in appropriate factual contexts, may be entitled to recovery via the negligence route under articles 2317 and 2317.1. Viewing from a negligence perspective the factual circumstances of the instant case, as contained in the limited record before us, we find genuine issues of fact exist so as to preclude summary judgment on a negligence theory. Briefly, the deposition testimony contained in the record reveals some evidence that Riverwood was aware of similar sink holes and/or drainage issues on the apartment complex property. In particular, the apartment manager testified that similar holes had been repaired on the property in the past. The primary lawn maintenance person during the period of time in which Mr. Barnes' accident occurred testified that he had seen a board placed over such an area and that it had later been filled with concrete. In addition, there was testimony establishing that this area was prone to drainage problems and sink holes because the complex had been erected on "reclaimed swampland." This testimony raises factual issues that should be decided by the trier of fact, rendering summary judgment in this case improper.

DECREE
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor or Riverwood Apartments Partnership is reversed and the matter is remanded to the trial court for further proceedings. Costs are assessed to Defendant/Appellee Riverwood Apartments Partnership.
REVERSED AND REMANDED.
NOTES
[1] Riverwood argues that Mr. Barnes was not a tenant at the time of his accident. The lease agreement in effect at the time of his accident, however, bears his signature and Mr. Barnes is referred to as a tenant therein. We find no merit to Riverwood's argument in this regard.
[2] The hole was located on Riverwood's property adjacent to Deborah Drive, owned and controlled by the City of Monroe. Issues exist regarding potential liability of the City of Monroe, which was not dismissed via the instant ruling on summary judgment and remains a defendant in the court below.
[3] To recover in strict liability or negligence, the plaintiff must prove that the thing under the defendant's control had a defect that posed an unreasonable risk of harm to others and that this defect caused plaintiff's injuries. Davis v. Diamond Shamrock Refining and Marketing Co., 34,309 (La.App.2d Cir. 12/6/00), 774 So.2d 1076; Dorion v. Eleven Eleven Building, 98-3018 (La.App. 4th Cir.5/12/99), 737 So.2d 878, and cases cited therein. In negligence actions under article 2317, the addition of article 2317.1 added the additional requirement of proof that the owner of the thing knew or should have known of the defect.
[4] In support of its argument that article 2317.1 implicitly repealed article 2695, Riverwood cites the prior decision of this court in Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, writ denied, 01-2582 (La. 12/14/01), 804 So.2d 647, which involved an injury from a defective stovetop in an apartment. Riverwood correctly points out that this court did not discuss article 2695 in that case. While the phrase "strict liability" does appear in Moody, it is clear that the case was pled and tried to the jury as a negligence case under articles 2317 and 2317.1. In fact, on appeal, one of the findings reviewed by this court was whether, under article 2317.1, the apartment complex knew or should have known of the stove's defective condition. Riverwood also cites the fourth circuit's opinion in Griffin v. Weingarden, 99-1394 (La.App. 4th Cir. 1/26/00), 752 So.2d 308, writ denied, 00-0632 (La.4/20/00), 760 So.2d 351. Griffin, like Moody, involved a negligence claim under 2317.1, not a strict liability claim under article 2695. Neither of these cases indicate in any way that the theory of article 2695 strict liability was not available to the plaintiffs in those cases. Finally, Riverwood cites the fifth circuit opinion in Cochran v. Safeguard Self-Storage, Inc., 02-1272 (La.App. 5th Cir.4/29/03), 845 So.2d 1128. After a thorough and cogent discussion and application of article 2695 and its relationship with La. R.S. 9:3221, infra, the court in Cochran apparently comingles the elements of strict liability and negligence, imposing a notice/knowledge component onto the plaintiff's burden of proof in his article 2695 strict liability claim. Strict liability and negligence claims are separate and distinct theories of recovery; in the former, notice/knowledge of the lessor is irrelevant, while, in the latter, it is an element proof of which is required for recovery. To the extent that the elements of these two theories are commingled in Cochran, we respectfully disagree with that opinion.