895 So.2d 603 (2005)
Sandra MONTECINO
v.
BUNGE CORPORATION, INC. and Its Unknown Insurance Company, ABC Insurance Company.
No. 04-CA-875.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
Rehearing Denied March 14, 2005.
*604 Fred R. Defrancesch, LaPlace, LA, for Plaintiff/Appellant.
Leon C. Vial, III, Hahnville, LA, for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Plaintiff/appellant Sandra Montecino appeals a summary judgment in favor of defendant/appellee Bunge Corporation. We reverse.
*605 Montecino alleges that while renting a home owned by Bunge, a portion of the ceiling suddenly fell on her, causing injuries. She contends that the ceiling had previously had a wet stain, which she reported to Bunge, but that nothing was done about it. Bunge answered the petition, and in July, 2001, filed a Motion For Summary Judgment. In support of the motion, Bunge filed an affidavit from Dustin Murphy, who attested that on the day in question, he, Raymond Jauffre, Chad Verda, and the Montecino's son Roberto were helping Mr. and Mrs. Montecino move their furniture and personal belongings, and had been there for several hours. Dustin was on the floor receiving material being handed down from the attic, when Raymond dropped a heavy box in the attic, which fell through the sheetrock and struck Mrs. Montecino, along with some of the sheetrock itself. Murphy further stated that he did not see any water stains on the ceiling.
Upon deciding more discovery was necessary, Bunge withdrew the Motion, and later re-filed for Summary Judgment in 2003. At this time, Murphy's deposition was submitted in connection with the Motion. Murphy testified that he had been working in the Montecino home for 30-45 minutes, although he really didn't remember. He did remember seeing the sheetrock and a computer box fall from the attic on Mrs. Montecino. He reiterated that he didn't exactly know how long he had been in the house, and that his earlier affidavit on this point was probably wrong. He further stated that he did not notice any water stains on the ceiling.
The deposition of Chad Verda was also admitted. Verda was in the attic handing boxes to Raymond, who in turn handed them to the men below. Some of the boxes that contained computers and screens were about 20 pounds. Verda stated that boxes were placed between two studs on the sheetrock, and ultimately, the sheetrock caved in. He did not drop the box. In the deposition the following exchange took place:
Q....Did you pay any attention to the Sheetrock (sic) at all when you were in the attic?
A. No.
Q. Well, did you notice if it might have been wet or damaged or anything? You seen anything like that?
A. It was wet and damaged, you could tell by looking at it.
Q. Was it wet or damaged before? It was not?
A. No.
Verda also stated that Montecino was in the right corner of the room below, and the ceiling fell "in the left corner of her side."
On the day of trial, the court granted Montecino sixty days within which to provide factual support sufficient to convince the court that a genuine issue of material fact existed so as to defeat summary judgment. The judgment stated that failure to provide such factual support would result in dismissal of the petition. After several continuances, Mrs. Montecino submitted the affidavit of Paul Loupe, a licensed contractor, who stated that he inspected another house on a street adjacent to Montecino's former abode, and that in the neighborhood there were several houses of the same age. (It appears from the record that the Montecino home had been torn down by Bunge). Loupe attested that in his opinion, a house of that age "given the time and wear and tear will show its age. Sheetrock will deteriorate. It is more probable than not the sheet rock fell because of its condition. It would be extremely difficult to place or store material in between the rafters on the sheetrock *606 directly given the distance between the rafters."
In granting summary judgment, the trial court found the affidavit of Mr. Loupe insufficient to establish the condition of the home where the injury occurred, or the cause of sheetrock falling from the ceiling. The court continued:
All of the evidence points toward a cause other than the condition of the ceiling itself, i.e., improper loading on the ceiling as the plaintiff was moving out. Plaintiff has therefore failed to established a prima facie case of liability and therefore defendant's motion for summary judgment is hereby GRANTED.
In the present case, it appears that the trial court inappropriately made factual findings and in addition, has misstated the applicable burden of proof. Under La. C.C.P. Art. 966(C)(2), the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.[1] It was not incumbent on Montecino to make a prima facie case of liability, but rather it was for Bunge to make a prima facie showing that no genuine issue of material fact existed. On our de novo review of this summary judgment, we find that Bunge has failed to carry its burden of proof.
Montecino has alleged fault and negligence on the part of Bunge. She has asserted that the portion of the ceiling that collapsed was discolored and wet prior to the incident. Bunge's obligation is expressed in La. C.C. art. 2695:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
This statute retains the concept of strict liability.
Under article 2695, a lessor guarantees his lessee against all vices and defects of the thing leased. This provision is found in the chapter of the civil code entitled Of the Obligations and Rights of the Lessor, and governs specifically the rights between lessors and lessees. In contrast, articles 2317 and 2317.1 are located in the chapter of the civil code entitled Obligations Arising Without Agreement  Of Offenses and Quasi Offenses. Prior to the 1996 tort reform legislation, article 2317 provided for strict liability in a much broader setting, i.e., an owner or custodian of a thing was strictly liable for damages occasioned by that thing. The 1996 enactment of 2317.1 added a notice or knowledge component to 2317, effectively changing liability in this particular area from strict liability to negligence. We believe that article 2317.1 was intended only to affect its immediate predecessor in number, article 2317, and we can find no authority or evidence that would suggest otherwise. As recently as 2001, Chief Justice Calogero expressed his concurrence with this conclusion, stating that article 2317.1 "does not impinge upon the lessee's *607 cause of action in strict liability against the lessor under La. C.C. art. 2695."[2]
To recover under Art. 2695, it is not necessary to prove the cause of the defect. A lessee must prove only the existence of the defect. In order for a lessee to recover damages from the lessor under this article due to an alleged vice or defect in the leased premises, the lessee must prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages.[3] Proof by direct or circumstantial evidence is sufficient to constitute a preponderance if, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Causation may be proved by circumstantial evidence, and that evidence need not negate all possible other causes, but it must exclude other reasonable hypotheses with a fair amount of certainty.[4]
In the present case, Verda stated that he could see a wet and damaged area in the sheetrock. The photographs submitted by Bunge do not support Bunge's assertion that the damaged sheetrock was situated in another part of the ceiling. Because Bunge is strictly liable for defects in the premises, whether such damage existed, and if so, whether it caused the complained-of damages, are questions of material fact sufficient to preclude summary judgment.
For the foregoing reasons, the summary judgment in favor of Bunge is reversed. The matter is remanded to the trial court for further proceedings. Costs of the appeal are assessed to Bunge.
REVERSED AND REMANDED.
NOTES
[1] See Jones v. Estate of Santiago XXXX-XXXX (La.4/14/04), 870 So.2d 1002.
[2] Barnes v. Riverwood Apartments Partnership, 38,331 (La.App. 2 Cir. 4/7/04), 870 So.2d 490, writ denied XXXX-XXXX (La.6/25/04), 876 So.2d 845, citing Driscoll v. Provenzano, 01-1115 (La.6/1/01), 793 So.2d 201, J. Calogero, concurring.
[3] Martinez v. Coleman 00-1827 (La.App. 5 Cir. 4/24/01), 786 So.2d 170.
[4] Barnes v. Riverwood Apartments Partnership, supra.