540 So.2d 1040 (1989)
Ralph DOWE, Administrator of the Estate of the Minor, Ralph Oliver Dowe, Appellees-Appellants,
v.
John H. GRADY and Louisiana Farm Bureau Insurance Company, Appellants.
No. 20,293-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1989.
*1041 Cotton, Bolton, & Hoychick by Terry Doughty, Rayville, Louisiana, for appellants.
Raymond Lee Cannon, Tallulah, for appellees-appellants.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The plaintiffs, Ralph Dowe Sr. and Jr., sued the defendant, John Grady, and his insurer, Farm Bureau, for damages resulting from a collision between Grady's pickup truck and Dowe Sr.'s ATV 3-wheeler, on which Dowe Jr. ("Ralph") was a passenger. The trial judge assigned all fault to Grady and set damages at $23,299.75, including $20,000 for generals and $1,750 for future medicals. Grady appeals, urging that Ralph was comparatively negligent and that the damages are excessive. The Dowes also appeal, contending the damages are inadequate. For the reasons expressed, we amend the judgment to delete the award of future medicals but otherwise affirm.

Facts
The accident occurred on a Friday afternoon, January 13, 1984, around 5:00 p.m. Ralph was 16 years old at the time; when he reached majority he was added as a party plaintiff. Ralph and his brother-in-law Tommy Brooks were riding down LaSalle St. in Tallulah on Mr. Dowe's ATV 3-wheeler. Tommy Brooks was driving and Ralph was passenger on the one-seat 3-wheeler, which was not licensed for on-road use. They headed north on LaSalle toward its intersection with Louisiana St.; LaSalle is favored. As Brooks entered the intersection, going about 15 m.p.h., he noticed a pickup truck coming from the left and apparently not fully stopping. Brooks *1042 veered to the right to avoid getting hit but was unable to avoid the truck. The truck hit the left rear portion of the 3-wheeler, striking Ralph's left leg. The 3-wheeler wound up under a tree on the side of the road. Brooks was not hurt. Ralph was bleeding on the rear part of his left leg, where his jeans leg had been torn; his left foot was also hurt. Ralph was nevertheless on his feet almost immediately.
Grady denied that he ran the stop sign, insisting that he stopped and looked well, but admitted he "just didn't see the boys." Although it was late afternoon there was enough light in the sky for everyone to see fairly well; neither Grady nor Brooks had his headlights on. Grady estimated his speed at impact as 1 m.p.h., but Ralph said it was 15 or 20 m.p.h. and the trial judge accepted this estimate.
At the scene Ralph declined an offer of an ambulance but later his father brought him to the emergency room at Madison Parish Hospital. He was treated and released that evening without being admitted. At home Ralph's knee began to swell and a large bruise began to develop. The following Monday Mr. Dowe carried him to Vicksburg to see Dr. Rowlett, an orthopedic surgeon who is now deceased. His medical reports were admitted as attachments to the other doctors' depositions. Dr. Rowlett drained a quantity of bloody fluid from Ralph's knee. He found large contusions but no bone fractures. He placed Ralph on pain medicine and suggested that he use his leg within the limits of pain. Ralph used crutches for a few weeks. Dr. Rowlett saw Ralph a total of six times. By March 5, he noted the knee was a little sore but that it should be fully weight-bearing; Ralph should be able to do "whatever he wants." On April 3, he noted a lump on the left posterior thigh. He thought it was a lipoma and suggested conservative heat treatment. On August 8 he saw Ralph for the last time and described him as asymptomatic. The lipoma was still present, but he did not feel it required surgical attention. He recommended that Ralph settle with the insurance company.
That fall Ralph resumed his major sports activities, playing both offensive and defensive tackle for his high school, Tallulah Academy. He started every game and garnered All-District honors. He also weightlifted, but has given up hunting. He complains of some periodic pain and swelling, especially if he leans on his foot, climbs stairs or carries anything heavy. He testified at trial in August 1987 that pain is still a problem if he uses his leg a lot. He also complains of the indention and lump on his thigh; this has never gone away. Since high school Ralph has worked on local farms, on a construction project in Virginia and as a lineman for Cablevision. He has never quit a job because of the injury. At the time of trial he was enrolled at NLU, majoring in criminal justice.
Two experts testified by deposition. Dr. Rambach, an orthopedist in Shreveport, examined Ralph in September 1985. He observed no contusions or knee problems, but noticed Ralph was slightly limping on his left lower extremity. He thought the lump on the back of the thigh was a hematoma, not a lipoma. He said Ralph's prognosis was good but he would still experience some pain. He assigned a 10% disability rating to the left leg, explaining that any trauma of this type would result in some functional disability. Dr. Brown, an orthopedist in West Monroe, examined Ralph in April 1986 and reported that Ralph denied any instability, swelling or real pain in the left leg. All tests were normal and he assigned no disability. As for the lump, he felt it was a lipoma which could be surgically removed, but surgery would be chiefly cosmetic and was not necessary. He did not project a price for the surgery.
In detailed written reasons for judgment the trial judge concluded that Ralph Dowe Jr. was not comparatively negligent in the accident. He awarded Mr. Dowe $1,761.25 for medical expenses and property damage to the 3-wheeler. He awarded Ralph $5,000 for disability and future pain and suffering, $10,000 for past pain and suffering, $5,000 for disfigurement, and $1,750 for future medicals. He denied claims for loss of companionship and lost earning capacity.

*1043 Discussion: Comparative Negligence

By this assignment Grady urges the trial judge erred in not finding Ralph at least partly at fault. He asserts that Ralph violated a statute prohibiting two-to-a-seat riding, LSA-R.S. 32:191, and allowed Brooks to violate statutes regarding on-road licensing and footrest requirements, LSA-R.S. 32:51, 32:191.3. All these statutes, he argues, were enacted to protect against the type of harm that occurred, and Ralph's failure to observe them was a legal cause of the accident.
At the outset we note that the statutes cited do indeed prohibit certain conduct. LSA-R.S. 32:51 provides:
§ 51. Vehicle license required
No person shall operate, or permit to be operated, any motor vehicle upon the highways of this state unless it is registered with the commissioner, the license tax is paid thereon, and it is operated in accordance with the provisions of this Chapter and other laws of this state.
Appellant claims this section recognizes that small vehicles like 3-wheelers have limited maneuverability and visibility on public highways and are for this reason not permitted to enter regular traffic with cars and trucks. He offers, however, no legislative or jurisprudential authority for this. When a statute does not provide a specific basis for imposing civil liability, the court must endeavor to interpret legislative intent as to the risk contemplated by the statute, often resorting to the court's own judgment of the scope of the protections intended. Wright v. O'Neal, 427 So.2d 852 (La.1983); Carter v. City Par. Govt. of E. Baton Rouge, 423 So.2d 1080 (La.1982).
R.S. 32:51 seeks to promote compliance with the general laws and rules of safety, but it does not specifically address the concerns of maneuverability and visibility. These would be better addressed by a statute regulating the height, weight and horsepower of vehicles. Cf. LSA-R.S. 32:380, 32:381, 32:386. As written, R.S. 32:51 appears to address the state's fiscal and record-keeping concerns of registration and license tax. We would be disinclined to hold that the duty imposed by this statute encompasses the risk that a 3-wheeler might not be visible to other motorists. However, we need not reach this issue because of our conclusion with respect to causation.
The other sections relied on by Grady do establish guidelines for protection against certain safety risks on the road. LSA-R.S. 32:191 and 32:191.3 provide in part:
§ 191. Riding on motorcycles
A. A person operating a motorcycle shall ride only upon the permanent and regular seat attached thereto. Such operator shall not carry any other person nor shall any other person ride on a motorcycle unless such motorcycle is designed to carry more than one person, in which event a passenger may ride upon the permanent and regular seat if designed for two persons, or upon another seat firmly attached to the rear or side of the motorcycle.
§ 191.3. Footrests and handlebars
A. Any motorcycle carrying a passenger, other than in a sidecar or enclosed cab, shall be equipped with footrests for such passenger.
Unquestionably Ralph Dowe did not comply with these sections. However, violation of a statute is not negligence per se. Brantley v. Brown, 277 So.2d 141 (La. 1973); Stephens v. State, through DHHR, 440 So.2d 920 (La.App. 2d Cir.1983), writ denied 443 So.2d 1119 (La.1984). To amount to actionable (or comparative) negligence, the violative conduct must be unreasonable under the circumstances and must cause the harm complained of. Stephens v. State, through DHHR, supra.
The trial judge carefully considered a number of cases in which statutory violations were asserted to establish civil liability, most notably the Brantley and Stephens cases cited above. In Brantley a minor was riding on the fender of a car in violation of a statute. A second vehicle ran a stop sign and collided with the first, injuring the minor. The supreme court concluded that the minor's act of illegally riding on the fender, while violative of a safety statute, played "no causative role in *1044 the accident." The facts and rationale of Brantley are apposite to the instant case. We do not see how Ralph's presence on the back of Brooks's seat caused this accident.
Rather, Grady's duty to stop, yield, or see what he should have seen was paramount, and his failure to do so strikes us as the exclusive cause of the injuries in this case. See LSA-R.S. 32:123; Thissel v. Comm'l Union Ins. Co., 476 So.2d 851 (La.App. 2d Cir.1985), writs denied 479 So.2d 361, 366 (La.1985); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935). This accident would have occurred even if Ralph Dowe had been riding on an attached passenger seat and the ATV had been equipped with footrests. The trial judge did not commit manifest error in assigning no fault to Ralph Dowe.
In the case of Smolinski v. Taulli, 276 So.2d 286 (La.1973), relied on by Grady and discussed by the trial judge, a two year old child who was 30 inches tall fell off the defendant lessor's upstairs porch. The lowest guardrail on the porch was 36 inches from the floor, in violation of the Jefferson Parish Building Code. The Supreme Court applied a duty/risk analysis, reasoning that the purpose for requiring a low guardrail was specifically to protect small children from falling. Thus the harm encountered came within the risk contemplated. If we were required to express an opinion as to the scope of the risks contemplated by the statutes, we would probably hold that they are intended to assure that a motorcycle passenger will be secure from falling off the bike and will not interfere with the driver. The actual harm probably did not fall within these risks. However, we decide the case on the basis of causation, and Smolinski is distinguished.
The trial judge did not err in his conclusion that Ralph's statutory violations were not negligence per se and in his finding that they were not the legal causes of the accident. This assignment does not present reversible error.

General Damages
By this assignment Grady contends the total damage award of $20,000 is excessive. By a separate appeal, Ralph Dowe urges the sum is inadequate. In the assessment of nonpecuniary damages, the trier of fact is accorded much discretion. LSA-C.C. art. 1999; Reck v. Stevens, 373 So.2d 498 (La.1979). The reviewing court must begin by analyzing the facts with a mind toward determining whether the award is an abuse of this discretion. Only after such an analysis and finding may the reviewing court turn to the jurisprudence of closely similar cases for comparison. Reck v. Stevens, supra; Coco v. Winston Indus., 341 So.2d 332 (La.1976). The trial court's factual findings are also accorded great discretion, even when they are based on documentary evidence such as medical depositions. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Virgil v. American Guar. & Liab. Ins., 507 So.2d 825 (La. 1987).
Numerous factors in this record support the award. From his unprotected position on the 3-wheeler, Ralph saw Grady's truck coming toward him. He was hit by the truck and knocked off the road. The impact ground through his jeans leg and made a large bruise on his leg. The left knee and foot were also injured; soon the knee was swelling. Ralph had to use ice packs, heating pads and Tylenol 3 for pain; he also walked on crutches for a few weeks. Dr. Rowlett found an effusion of the knee and drained it. He noted a "big ecchymosis" on the thigh and small avulsion fractures in the foot. By early March Dr. Rowlett said Ralph could resume his usual activities within the limits of pain. Ralph nevertheless returned to Dr. Rowlett three more times with complaints about the lump in his thigh. Dr. Rowlett discharged him in August as "asymptomatic" but Ralph still complained of occasional, residual pain in his foot and knee, and discomfort in his thigh. Over a year later, Dr. Rambach observed that Ralph was walking with a slight limp. He felt that Ralph had not fully recovered. Rambach's Dep., 8. He assigned a permanent disability rating of 10%. Over two years after the accident, Dr. Brown felt that Ralph was completely recovered with no disability. He noted, *1045 however, that the lump was still present on Ralph's thigh and would not go away on its own. Brown's Dep., 12. At trial in August 1987, Ralph complained that his biggest problem was occasional knee pain, becoming more frequent in cold weather. He was also annoyed by the unsightly lump on his thigh.
Other facts would counsel in favor of a lower award. Ralph did not require hospitalization or much medication as a result of the accident. According to Dr. Rowlett's reports, he was able to do most activities after two months and was released after seven. After that time, his ability to play football and hold a series of jobs was not greatly impaired. Dr. Rambach assigned only a small disability and Dr. Brown found none at all.
Despite the favorable doctors' reports, the trial judge was apparently impressed by Ralph's testimony of continued problems, such as the knee swelling after football practice, reduced weight when powerlifting, and frequent pain in the knee when climbing stairs. This evidence substantiates Dr. Rambach's observation that any type of injury that was still producing pain over two years after the accident would continue to do so. Rambach's Dep., 8.
In the balance we cannot say the award, though on the high side, is an abuse of discretion. Grady has cited for comparison cases such as Boyer v. Walker-Roemer Dairies, 402 So.2d 118 (La.App. 3d Cir. 1981) and Cobbs v. Bourgeois, 404 So.2d 540 (La.App. 4th Cir.1981). In those cases, the plaintiffs suffered no permanent disabilities as did Ralph, so they are not really comparable. In his appeal, Ralph complains that the trial judge failed to take into account his active lifestyle in assessing the effects of the disability. The plaintiff's level of activity is a valid factor to consider. Zeagler v. Dillard Dept. Stores, 521 So.2d 766 (La.App. 2d Cir.1988); Wallace v. State Farm, 509 So.2d 466 (La.App. 3d Cir.1987), writ denied 510 So.2d 377 (La.1987). However, the trial judge's reasons for judgment show a careful consideration of Ralph's activities, especially football and hunting, and this contention is not supported by the record. R.p. 78, 79.
These assignments do not present reversible error.

Future Medicals
By this assignment Grady urges the trial judge erred in awarding future medicals that were neither shown to be necessary nor specifically quantified by the evidence. This award was to cover the cost of surgically removing the lump in the plaintiff's thigh. Ralph Dowe argues that the award, though not quantified, is reasonable and should be affirmed.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of the injury. Even though the possible result of future surgery is unknown and its cost cannot be fixed with precision, future medical expenses are a legitimate item of damages. LSA-C.C. art. 2315; Guillory v. Avondale Shipyards, 448 So.2d 1281 (La. 1984). A degree of uncertainty is implicit in every quantum issue. Coco v. Winston Indus., supra. Nevertheless the plaintiff must prove, more probably than not, that these expenses will be incurred. Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir. 1979), writ denied 369 So.2d 1352 (La.1979). A court cannot pull a figure out of the air and award it as damages for future medical expenses based on a speculative possibility. Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970), writ denied 256 La. 266, 236 So.2d 36 (1970).
Ralph testified that at the time of trial his two chief problems were residual pain in the knee and the lump in his thigh. R. p. 168. He did not complain about pain in the thigh, only about its appearance. R.p. 181. Dr. Rowlett, writing to Ralph's attorney in March 1985, stated that if the lump bothered him or increased in size, it might be surgically removed. Dr. Rambach, who examined Ralph over a year later, felt the lump was a resolving hematoma, anticipated no further problems with it and did not recommend surgery. Rambach's Dep., 13. Dr. Brown, who examined Ralph over two years after the accident, *1046 thought the lump was a lipoma that needed no medical attention. Brown's Dep., 12. He mentioned the possibility of a liposuction for cosmetic purposes. Ralph himself testified he would like to have the lump removed for appearance's sake.
Apart from Dr. Rowlett's early letter advising Ralph to watch the lump for changes that might require surgery, there is no evidence establishing a genuine need for future medicals. Dr. Rowlett's early concern about potential growth of the lump was effectively superseded by the other doctors' later observations that it was "resolving." Under the circumstances, the trial judge's award for future medicals is based only on a speculative possibility. Poche v. Frazier, supra; Boothe v. NOPSI, 447 So.2d 620 (La.App. 4th Cir.1984).
We further note that the trial judge awarded $5,000 for disfigurement. We concluded that the general damages were within the trial judge's discretion. It is not appropriate to award both general damages for disfigurement and future medicals for the cost of repairing disfigurement. Wilson v. Yellow Cab Co. of Shreveport, 64 So.2d 463 (La.App. 2d Cir.1953); Poe v. New Amsterdam Cas. Co., 154 So.2d 519 (La.App. 4th Cir.1963), writs denied 244 La. 1021, 1022, 156 So.2d 226 (1963). For these reasons the award of future medicals was an abuse of the trial judge's discretion and must be deleted from the award.

Decree
For the reasons expressed, the judgment is amended to delete the award for future medicals. The judgment is otherwise affirmed. Costs will be borne equally by the parties.
AMENDED AND AFFIRMED.