16 So.3d 361 (2009)
Ralph T. BARNES, Plaintiff-Appellant
v.
RIVERWOOD APARTMENTS PARTNERSHIP and the City of Monroe, Defendants-Appellees.
No. 43,798-CA.
Court of Appeal of Louisiana, Second Circuit.
February 4, 2009.
Rehearing Granted April 2, 2009.
Opinion on Rehearing August 5, 2009.
*363 Anthony J. Bruscato, Monroe, for Plaintiff-Appellant.
Hudson, Potts & Bernstein by: Donald H. Zeigler, III, Mark J. Neal, Monroe, Appellees, Riverwood Apartments Partnership, Counsel for Defendants Shelter Mutual Ins. Co.
Nanci S. Summersgill, Monroe, for Defendant-Appellee, City of Monroe.
Before GASKINS, CARAWAY and LOLLEY, JJ.
GASKINS, J.
The plaintiff, Ralph T. Barnes, appeals from a trial court judgment clarifying a previous jury verdict. On remand from this court, the trial court dismissed the plaintiff's claims against the City of Monroe (City) and the Riverwood Apartments Partnership (Riverwood). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
This is the third time that this matter has been before this court. Simply stated, on May 10, 1997, the plaintiff, a resident of Riverwood, went out for a walk and fell into a hole located adjacent to the curb of Deborah Drive, a street that abuts the Riverwood property. It appears that the hole was covered with grass when the plaintiff stepped on it. The plaintiff sustained a broken leg.
Deborah Drive is located adjacent to Riverwood. A driveway enters Riverwood from Deborah Drive; the apartments do not face the street. From Deborah Drive, in the area of the hole at issue here, a sign is visible identifying the apartment complex. From this area, only the back of the apartments is visible. Between the back of the apartments and the street is a grassy area. The record shows that the City owns the street and 12 feet into the grassy area behind the Riverwood complex. Riverwood owns the remaining grassy area up to and including the buildings. On the paved curb of the street is a drain. The hole was located directly next to the paved street and went under the pavement where dirt had washed away. The hole was covered with grass. No drainage pipes from Riverwood emptied into the drain. There is no sidewalk next to the street.
In Barnes v. Riverwood Apartments Partnership, 38,331 (La.App. 2d Cir.4/7/04) 870 So.2d 490, writ denied, XXXX-XXXX (La.6/25/04) 876 So.2d 845 (Barnes I), this court stated the facts as follows:
At the time of his injury that forms the basis of this lawsuit, Mr. Barnes was a tenant in the Riverwood Apartments in *364 Monroe, Louisiana. While walking across the common area of the apartment complex to a designated drop-off site for canned food donations, Mr. Barnes stepped in a hole and sustained injuries to his legs. The hole was created by a washing away of soil near a drainpipe and, apparently, was not readily visible because of the turf that continued to grow over the top of the hole. As a result of the damages sustained, Mr. Barnes sued Riverwood, its insurer and the City of Monroe. [Footnotes omitted.][1]
In Barnes I, the plaintiff filed a motion for summary judgment and a motion to determine the applicable law regarding whether he could argue both the theories of strict liability and negligence. The plaintiff claimed that Riverwood was liable under the theory of strict liability set forth in La. C.C. art. 2695, which specified that a landlord was strictly liable to a tenant for injuries caused by defects in the premises. The trial court found that the theory of strict liability did not apply to this case and concluded that Riverwood had no notice of the hole and was not liable under the principles of negligence under La. C.C. arts. 2317 and 2317.1. Judgment was entered in favor of Riverwood. This court reversed and remanded for trial, finding that the plaintiff could proceed under both the theories of strict liability and negligence.
On remand, a jury trial was held. Before the case was submitted to the jury, the trial court granted a motion of involuntary dismissal in favor of the City, dismissing the plaintiff's claims against it. The jury rendered judgment in favor of Riverwood. The plaintiff appealed.
In Barnes v. Riverwood Apartments Partnership, 42,912 (La.App. 2d Cir.2/6/08), 975 So.2d 720 (Barnes II), this court found that an indeterminate judgment had been entered. We observed that:
After hearing the evidence, the jury answered a document entitled "Interrogatories to the Jury" in which they made the following findings:
 The City of Monroe owned the property on which Mr. Barnes' injury occurred.
 The area on which the injury occurred was not part of the leased premises.
 Riverwood did have the care, custody and control of the property where the cave-in occurred.
 Mr. Barnes did not prove by a preponderance of the evidence that Riverwood should have known of the unreasonably dangerous condition.
 The defective and unreasonably dangerous condition did cause injury to Mr. Barnes.
 Riverwood did not prove by a preponderance of the evidence that Mr. Barnes was negligent.
In a separate interrogatory, the jury then allocated 33 1/3 percent fault each to Mr. Barnes, Riverwood and the City of Monroe. Finally, the jury awarded $5,000 for past medical expenses. The interrogatories, and the answers thereto, were incorporated into the trial court's final judgment, which, following the interrogatories, *365 continued to read, "[f]or the reasons expressed in the foregoing Interrogatories, the court enters Judgment in favor of Riverwood and Shelter, dismissing plaintiff's claims at plaintiffs cost." (Emphasis ours.)
In Barnes II, we vacated the jury verdict and remanded the matter to the trial court for clarification of the judgment.
On remand, the trial court held a hearing on March 26, 2008. At that hearing, it was argued that the jury interrogatories should have directed the jury to stop after interrogatories four and five if they found that Riverwood and the City neither knew nor should have known, in the exercise of reasonable care, of the unreasonably dangerous condition which caused the plaintiff's injuries and that his injuries could have been prevented by the exercise of reasonable care. The jury found that Riverwood and the City neither knew nor should have known of the condition. On remand, the plaintiff filed a motion for judgment notwithstanding the verdict (JNOV) under La. C.C.P. art. 1811. The trial court never used that exact phraseology, but in effect granted a JNOV in favor of Riverwood.
In a judgment signed May 28, 2008, the trial court found that the City owned the property in question, but had no notice or knowledge of any unreasonably dangerous condition in said property. Judgment was granted in favor of the City, dismissing the plaintiff's claims against it.
The trial court then specified that the jury found that Riverwood did not own the property in question. The jury also found that the plaintiff did not prove that the property in question was part of the leased thing. Therefore, the plaintiff failed to carry his burden of proof with respect to claims asserted under former La. C.C. art. 2695 and the plaintiff's claims of strict liability were dismissed.
The trial court found that the plaintiff failed to prove that Riverwood knew of the unreasonably dangerous condition which caused the plaintiff's injuries. According to the trial court, the jury also found that the plaintiff failed to prove that his injuries could have been prevented by the exercise of reasonable care. Therefore, the plaintiff failed to carry his burden of proof with respect to his negligence claims on the part of Riverwood and those claims were dismissed.
The plaintiff filed the present appeal, asserting numerous assignments of error.[2]

OWNERSHIP
Originally, when this suit was filed, Riverwood assumed that it owned the area where the accident occurred. During the course of the trial of this matter, Riverwood changed its position to assert that the area where the accident occurred was located on the City's property next to and including Deborah Drive and that Riverwood could not be held liable for a hole on adjoining property. The evidence at trial established that the hole was located on the curb directly next to Deborah Drive on property owned by the City.
Tod Cagle, an attorney who was accepted as an expert in Louisiana property law, testified that a 60-foot piece of property was legally dedicated by land developers to the City for Deborah Drive. This dedication gave ownership of the 60-foot wide strip of property to the City. Deborah Drive was constructed only to a width of 36 feet; 12 feet from the edge of the pavement toward Riverwood was City property.
*366 The evidence establishes that the area where the accident occurred was owned by the City. Strict liability no longer applies to public entities and the City could only be held liable under the negligence theory if it knew or should have known of the defect. La. R.S. 9:2800. The hole was covered by grass and there is no evidence to show that the City knew or should have known of the defect. Accordingly, there was no evidence in this record to meet the burden of proof of negligence on the part of the City.
The trial court granted a motion for directed verdict dismissing the plaintiff's claims against the City and the plaintiff has not appealed that judgment. However, on appeal, the plaintiff raises numerous assignments of error regarding the issue of ownership. The plaintiff claims that Riverwood judicially confessed that it owned the area where the accident occurred and that it was part of the common ground of the apartment complex. Regarding judicial confessions, La. C.C. art. 1853 provides:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
In this matter, any early admissions by Riverwood concerning ownership of the area where the hole was located were factually erroneous. Because a judicial confession may be revoked on grounds of error of fact, the trial court did not err in allowing Riverwood to show that it did not own the area where the accident occurred. Although the plaintiff raises numerous assignments of error regarding the issue of ownership, we find these are not dispositive in this matter.

STRICT LIABILITY
The plaintiff sought to establish liability against Riverwood through the theory of strict liability of lessors set forth in former La. C.C. art. 2695. The plaintiff on appeal argues that the trial court erred in finding that the grassy area where this accident occurred was not part of the leased premises. The plaintiff also claimed that the apartment drainage system, which emptied into the City's catch basin on Deborah Drive, was leaking and the leak caused erosion under the grass, forming a hole. According to the plaintiff, the drainage system was part of the leased premises.
At the time of this accident, La. C.C. art. 2695, dealing with the strict liability of a lessor, stated:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.[3]
In Barnes I, we discussed this article and stated that a defect, for purposes of the provision, had been defined as "a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances." We stated that to recover under this article, it is not necessary to prove the cause of the defect; the lessee need only prove the existence of the defect. We further *367 set forth that, in order for a lessee to recover damages from the lessor under the article due to an alleged vice or defect in the leased premises, the lessee must prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages. We found that strict liability under La. C.C. art. 2695 had consistently been applied by Louisiana courts to all portions of the leased property, including areas not under the control of the lessee such as common accessories which are used by multiple tenants like stairways, walkways, steps, and passageways. See cases cited in Barnes I.
To recover under the theory of strict liability, the plaintiff must prove that: (1) the thing which caused the damage was in the custody of the defendant; (2) the thing was defective because it had a condition that created an unreasonable risk of harm to the plaintiff; and (3) the defective condition of the thing caused the plaintiff's injuries. Lee v. Magnolia Garden Apartments, 96-1328 (La.App. 1st Cir.5/9/97), 694 So.2d 1142, writ denied, 97-1544 (La.9/26/97), 701 So.2d 990.
When this accident occurred, La. C.C. art. 2681 provided that he who possesses a thing belonging to another may let it to a third person, but he cannot let it for any other use than that to which it is usually applied.[4] The evidence in this matter establishes that the street, and the 12-foot strip between it and Riverwood were owned by the City. The question arises as to whether Riverwood included this property in its lease. Ownership is not necessarily dispositive in determining what constitutes the leased premises. In Barnes I, we determined that the lease included the common areas. No description of the common areas was included in the lease.
The apartment manager at the time of this incident, Mary Katherine Burkett, testified that the grassy areas in the front, sides, and back of the complex were designated for dog walking. No further information was elicited, such as whether this designation was relayed to the tenants or whether dog owners just found the nearest grassy area out of the flow of foot traffic for use by their pets.
The evidence shows that the plaintiff was taking a new route leaving the apartment complex for his daily walk and had not gone into the back grassy area previously. He was walking along the edge of the paved roadway when he stepped into the hole along the curb of the street. The hole was a concave area that was washed out beside and under the street.
The City owned this roadside area where the hole was located. To find that Riverwood leased the City property where the hole was located to its tenants, the plaintiff would have to show that Riverwood possessed the roadside, incorporated it into its common area, and that tenants would reasonably believe that the roadside was part of the common area.[5] Riverwood put on evidence to show that no pipes from Riverwood flow into the drain or caused the erosion which resulted in the formation of this hole. We find, as did the trial court, that the area where the hole was located was not part of the leased premises. Accordingly, we find that the plaintiff has failed to show that Riverwood is liable for the plaintiff's injuries under the theory of strict liability.

*368 NEGLIGENCE
The plaintiff also sought to recover under the theory of negligence. The law applicable to a claim of negligence is set forth in La. C.C. arts. 2317 and 2317.1. La. C.C. art. 2317 provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
La. C.C. art. 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
The addition of La. C.C. art. 2317.1 to the Civil Code in 1996 did away with the concept of strict liability for a defective thing by imposing on plaintiffs the added burden of proving that the defendant either knew, or with the exercise of reasonable care, should have known of the ruin, vice, or defect. Player v. Baker, 42,451 (La.App. 2d Cir.9/19/07), 965 So.2d 984.
In addition to proving this knowledge element, the plaintiff must also prove that the defendant had custody of the thing which caused injury, that the thing contained a defect (meaning a condition that created an unreasonable risk of harm), and that the defective condition caused the plaintiff's injury. Player v. Baker, supra; Johnson v. City of Monroe, 38,388 (La. App. 2d Cir.4/7/04), 870 So.2d 1105, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 843.
The record shows that the offending hole was covered by grass until the plaintiff stepped on it and fell in. Even though Riverwood mowed the area and picked up trash next to the road, there is no showing that Riverwood had notice of the existence of the hole.[6] Therefore, as found by the trial court, the plaintiff failed to establish any negligence on the part of Riverwood.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment finding that plaintiff failed to establish that the area where this accident occurred was part of the leased premises of Riverwood and that the plaintiff failed to establish that the defendant, Riverwood Apartments Partnership, is liable to the plaintiff under the theories of strict liability or negligence for injuries sustained when the plaintiff fell into a hole. Costs in this court are assessed to the plaintiff.
AFFIRMED.
CARAWAY, J., concurs with written reasons.
LOLLEY, J., dissents with written reasons.
CARAWAY, J., concurring.
This case presents a borderline situation, literally regarding the site of the accident and figuratively concerning the place where liability and responsibility for the accident should fall. Riverwood's lease *369 premises reasonably extended to the edge of the concrete curb of the street owned by the City. It matters not that the City owned additional footage beyond the street because Riverwood mowed the grass to the curb and its tenants viewed the property as a part of the lease premises. Therefore, on the boundary between the lease premises and the street, the accident occurred.
The cause for the deteriorated condition of the sinkhole at that boundary had everything to do with the City's garde, and not Riverwood's garde. Garde, of course, is "the obligation imposed by law on the proprietor of a thing, or one who avails himself of it, to prevent if from causing damage to others." Spott v. Otis Elevator Company, 601 So.2d 1355 (La.1992), citing Loescher v. Parr, 324 So.2d 441, 447 (La. 1975). The sinkhole was caused by the undermining of the ground beneath the concrete curb because of drainage or utility services unrelated to Riverwood.
I also note that even though the plaintiff's foot landed on Riverwood's side of the boundary, any strict liability of Riverwood at that boundary location did not amount to absolute liability. One exception to Louisiana's vanishing strict liability regime, though seldom arising, concerns the fault of a third person. In Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978), the court said:
The fault of a "third person" which exonerates a person from his own obligation importing strict liability as imposed by Articles 2317, 2321, and 2322 is that which is the sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence i.e., where the damage resulting has no causal relationship whatsoever to the fault of the owner in failing to keep his building in repair, and where the "third person" is a stranger rather than a person acting with the consent of the owner in the performance of the owner's non-delegable duty to keep his building in repair.
Id. at 1293. In this borderline situation, the City's failed obligation for garde at the boundary where this accident occurred can be viewed as the sole cause of plaintiff's injury, preventing the imposition of strict liability on Riverwood.
LOLLEY, J., dissenting.
I respectfully dissent from the ruling of the majority in this matter. I remain of the opinion that defendant Riverwood and possibly defendant City of Monroe are liable for the serious injuries suffered by plaintiff.
This is the third time the issues of this case have been debated by this court. First, we considered this case in Barnes v. Riverwood Apartments Partnership, 38,331 (La.App. 2d Cir.04/07/04), 870 So.2d 490, writ denied, XXXX-XXXX (La.06/25/04), 876 So.2d 845 (Barnes I). After remand to the trial court this court again addressed the issues in Barnes v. Riverwood Apartments Partnership, 42,912 (La.App. 2d Cir.02/06/08), 975 So.2d 720 (Barnes II). Unfortunately, we continue to address the issues of this case yet again.
I am of the opinion that the ruling of this court in Barnes I was the correct analysis of the issues surrounding the incident which led to the serious injuries suffered by plaintiff.
In the present opinion, which I must assume will become known as Barnes III, the majority makes major emphasis over the location of the hole plaintiff stepped off into and suffered the injuries. The emphasis was that the hole, covered by sod, was located at or near the edge of the street (Deborah Drive) where the apartment complex is located and thus at the outer edge of the City of Monroe's right of way. Accordingly, the majority is stating *370 that no one, especially lessees, should have any reasonable expectation of safety while traversing any common area of the complex whatsoever.
I am of the opinion that it does not matter where the hole was located in relation to the rest of the complex or whether the buildings of the complex faced away from the street and most especially that the area where the incident occurred was, according to the management of Riverwood, where the residents walked their pets. This area, along Deborah Drive, was what would be considered a common area, maintained by Riverwood or a lawn contractor, and obviously held out for reasonable and safe use by the lessees. Even in this area, a common area, plaintiff had every reasonable expectation of being able to traverse it without unreasonable risk and ultimate injury.
The area of the apartment complex in question faces generally north along Deborah Drive in Monroe, Louisiana. As pointed out in Barnes I this area is, literally, drained and reclaimed swampland developed since the mid-1980s. Both the City of Monroe and the landowners should have been more than well aware of the topography and soil composition of this area. As pointed out in Barnes I, there was evidence in the record that such sink holes and other forms of washouts were not unknown at this location. Evidence of the repairs of these problems around the apartment complex grounds, including the pouring of concrete into some of the holes and/or washouts, was also presented. Therefore, by the presence of these known problems, I am of the opinion that both the City of Monroe and Riverwood should have maintained a higher degree of constant garde over these common areas than they obviously did. Whether the injured person was a lessee, guest or visitor, there should at all times exist a reasonable expectation of safety in a common area such as this. Otherwise, pay your rent ... take your chances.
The ruling of the trial court should be reversed and remanded for further proceedings.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY, and LOLLEY, JJ.
Rehearing granted.
GASKINS and CARAWAY, JJ., would deny rehearing.

ON REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY, and LOLLEY, JJ.
LOLLEY, J.
The plaintiff, Ralph T. Barnes, appeals from a trial court judgment clarifying a previous jury verdict. On remand from this court, the trial court dismissed the plaintiff's claims against the City of Monroe ("City") and the Riverwood Apartments Partnership ("Riverwood"). For the following reasons, we reverse the trial court's judgment and enter judgment in favor of Barnes.

FACTS AND PROCEDURAL HISTORY
This is the third time that this matter has been before this court. Simply stated, on May 10, 1997, Barnes, the plaintiff and a resident of Riverwood, went out for a walk and fell into a hole located adjacent to the curb of Deborah Drive, a street on the periphery of the Riverwood property. The facts reveal that the hole was covered with grass when Barnes stepped in it. Barnes broke his leg as a result of the fall.[1] In Barnes v. Riverwood Apartments *371 Partnership, 38,331 (La.App. 2d Cir.04/07/04), 870 So.2d 490, writ denied, XXXX-XXXX (La.06/25/04), 876 So.2d 845 ("Barnes I"), this court stated that:
The hole was created by a washing away of soil near a drainpipe and, apparently, was not readily visible because of the turf that continued to grow over the top of the hole. As a result of the damages sustained, Mr. Barnes sued Riverwood, its insurer and the City of Monroe. [Footnotes omitted.]
In Barnes I, the plaintiff filed a motion for summary judgment and a motion to determine the applicable law regarding whether he could argue both the theories of strict liability and negligence. The plaintiff claimed that Riverwood was liable under the theory of strict liability set forth in former La. C.C. art. 2695, which specifies that a landlord is strictly liable to a tenant for injuries caused by defects in the premises. The trial court found that the theory of strict liability did not apply to this case and concluded that Riverwood had no notice of the hole and was not liable under the principles of negligence under La. C.C. arts. 2317 and 2317.1. Summary judgment was entered in favor of Riverwood. This court reversed and remanded for trial, finding that Barnes could proceed under both the theories of strict liability and negligence.
In Barnes v. Riverwood Apartments Partnership, 42,912 (La.App. 2d Cir.02/06/08), 975 So.2d 720, ("Barnes II"), after a jury trial, the trial court entered judgment in favor of Riverwood. The trial court also granted a motion of involuntary dismissal in favor of the City, dismissing the plaintiff's claims against it. The plaintiff appealed. In Barnes II we observed:
At all times during the initial litigation, it was "assumed," and it was stated and referenced in pleadings and in this court's opinion, that Riverwood owned the property where the hole was located. The hole was located adjacent to Riverwood's sign and was treated as a common area of the apartment complex. Actual ownership of the grassy section was not at issue in Barnes I. Riverwood filed pleadings stating that the grassy area was used as part of the common area of the complex. In footnote 2 of Barnes I, this court noted that "[t]he hole was located on Riverwood's property adjacent to Deborah Drive." The result of Barnes I was a remand. While preparing for trial on remand, however, Riverwood changed its position on ownership of the area where the hole was located. Simply stated, Riverwood discovered that Deborah Lane was not constructed to the 60 foot width as set forth in the original plat. Instead, Deborah Lane was only constructed to be 36 feet in width. The issue then arose concerning the ownership of the strip of land that was not used in the construction of Deborah Lane.

Barnes I was rendered April [2004]. On remand, the trial court set a discovery cutoff of February 25, 2005. Trial was set for May 9, 2005. On April 22, 2005, Riverwood asserted that it did not own the grassy area where Mr. Barnes fell. Mr. Barnes filed a motion to prohibit Riverwood from withdrawing its "judicial confession" of ownership. Riverwood then filed a motion for summary judgment with an affidavit attached from a title expert denying ownership of the grassy strip of land. Both motions were denied by the trial court. Another motion for summary judgment was filed by Riverwood and was denied. Mr. Barnes then filed a motion in limine *372 requesting the court to decide the issue of title as an issue of law rather than fact, which was denied. Both parties then filed untimely amendments to their respective witness lists adding title experts. Riverwood's expert was allowed. Riverwood filed a motion to strike Mr. Barnes' expert, which was granted.
After hearing the evidence, the jury answered a document entitled "Interrogatories to the Jury" in which they made the following findings:
 The City of Monroe owned the property on which Mr. Barnes' injury occurred.
 The area on which the injury occurred was not part of the leased premises.
 Riverwood did have the care, custody and control of the property where the cave-in occurred.
 Mr. Barnes did not prove by a preponderance of the evidence that Riverwood should have known of the unreasonably dangerous condition.
 The defective and unreasonably dangerous condition did cause injury to Mr. Barnes.
 Riverwood did not prove by a preponderance of the evidence that Mr. Barnes was negligent.
In a separate interrogatory, the jury then allocated 33 1/3 percent fault each to Mr. Barnes, Riverwood and the City of Monroe. Finally, the jury awarded $5,000 for past medical expenses. The interrogatories, and the answers thereto, were incorporated into the trial court's final judgment, which, following the interrogatories, continued to read, "[f]or the reasons expressed in the foregoing Interrogatories, the court enters Judgment in favor of Riverwood and Shelter, dismissing plaintiff's claims at plaintiff's cost." (Emphasis ours.)
In Barnes II, this court found that the judgment purporting to dismiss the plaintiff's claims, but incorporating jury interrogatories which allocated fault one-third to each of the three defendants and awarding the plaintiff special damages, was an indeterminate judgment. We vacated the jury verdict and remanded the matter to the trial court for clarification of the judgment.
On remand, the trial court held a hearing on March 26, 2008. At the hearing on remand, it was argued that the jury interrogatories should have directed the jury to stop after interrogatories four and five if they found that Riverwood and the City did not know, in the exercise of reasonable care, or should have known of the unreasonably dangerous condition which caused the plaintiff's injuries and that his injuries could have been prevented by the exercise of reasonable care. The jury had found that Riverwood and the City neither knew nor should have known of the condition.
In its judgment signed May 28, 2008, the trial court found that the City owned the property in question, but had no notice or knowledge of any unreasonably dangerous condition in said property. Judgment was granted in favor of the City, dismissing the plaintiff's claims against it. The trial court then specified that the jury found that Riverwood did not own the property in question. The jury also found that the plaintiff did not prove that the property in question was part of the leased thing. Therefore, the plaintiff failed to carry his burden of proof with respect to claims asserted under former La. C.C. art. 2695 and the plaintiff's claims of strict liability were dismissed. The trial court also found that Barnes failed to prove that Riverwood knew of the unreasonably dangerous condition which caused his injuries. The jury also found that Barnes failed to prove that his injuries could have been prevented by the exercise of reasonable care. Therefore, the plaintiff failed to carry *373 his burden of proof with respect to his negligence claims on the part of Riverwood and those claims were dismissed. The plaintiff filed the present appeal, asserting numerous assignments of error.[2]

DISCUSSION

Ownership of the Property
Originally, when this suit was filed, Riverwood assumed that it owned the area where the accident occurred. During the course of the trial of this matter, Riverwood changed its position to assert that the area where the accident occurred was located on the City's right of way on Deborah Drive and that Riverwood could not be held liable for a hole on adjoining property. The evidence at trial established that the hole was located directly next to Deborah Drive, and this was within the City's right of way.
John Maroney, an expert in civil engineering and land surveying, testified at trial that he surveyed the property and essentially found that the area where this accident occurred was within the 60-foot right of way for Deborah Drive. Tod Cagle, an attorney who was accepted as an expert in Louisiana property law, testified as to the ownership of the property where the accident occurred. He stated that Riverwood's property description specifies that the boundary of the property is the right of way for Deborah Drive.
The evidence establishes that the area where the accident occurred was owned by the City. Strict liability no longer applies to public entities and the City could be held liable under the negligence theory only if it knew or should have known of the defect. La. R.S. 9:2800. There was no evidence in this record to meet the burden of proof of negligence on the part of the City. Furthermore, and as stated above, the trial court granted a motion for directed verdict dismissing the plaintiff's claims against the City, and the plaintiff has not appealed that judgment.
However, on appeal, Barnes raises numerous assignments of error regarding the issue of ownership. He claims that Riverwood judicially confessed that it owned the area where the accident occurred and that it was part of the common ground of the apartment complex; that the trial court erred in submitting the issue of ownership to the jury as a fact issue instead of treating it as a legal issue for decision by the court; that the trial court erred in prohibiting the plaintiff from offering evidence of Riverwood's previous position and change of position; that the trial court erred in allowing Riverwood's title expert to testify while excluding the plaintiff's title expert; the trial court erred in refusing to admit the Monroe City ordinances into evidence bearing on the issue of ownership; and, that the trial court (or jury) erred in concluding that the area where the accident occurred was not owned by Riverwood. As will be discussed below, the issue of ownership is not dispositive of Riverwood's liability and therefore, we find that discussion of these assignments of error is not necessary for a decision in this matter.

Strict Liability under La. C.C. art. 2695
One theory by which Barnes sought to establish liability against Riverwood was through the theory of strict liability of lessors set forth in former La. C.C. art. 2695. At the time of this accident, La. C.C. art. 2695, dealing with the strict liability of a lessor, stated:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing *374 of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.[3]
In Barnes I, we discussed this article and stated that a defect, for purposes of the provision, had been defined as "a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances." We stated that to recover under this article, it is not necessary to prove the cause of the defect; the lessee must only prove the existence of the defect. We further set forth that, in order for a lessee to recover damages from the lessor under the article due to an alleged vice or defect in the leased premises, the lessee must prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages. We further found that strict liability under La. C.C. art. 2695 has consistently been applied by Louisiana courts to all portions of the leased property, including areas not under the control of the lessee such as common accessories which are used by multiple tenants such as stairways, walkways, steps, and passageways. See Barnes I.
To recover under the theory of strict liability, the plaintiff must prove that: (1) the thing which caused the damage was in the custody of the defendant; (2) the thing was defective because it had a condition that created an unreasonable risk of harm to the plaintiff; and, (3) the defective condition of the thing caused the plaintiff's injuries. Lee v. Magnolia Garden Apartments, XXXX-XXXX (La.App. 1st Cir.05/09/97), 694 So.2d 1142, writ denied, XXXX-XXXX (La.09/26/97), 701 So.2d 990.
Ownership is not a necessary component of recovery for strict liability; it is only required to show that the thing causing the damage was in the custody of the defendant. Here, it is evident that Riverwood had custody of the area where the hole appeared causing Barnes' injury. The test for determining custody or garde is two-fold: (1) whether the person bears such a relationship as to have the right of direction or control over the thing, and (2) what, if any, kind of benefit the person derives from the thing. Graubarth v. French Market Corp., XXXX-XXXX (La.App. 4th Cir.10/24/07), 970 So.2d 660.
The evidence and testimony presented at trial shows that the area where Barnes' accident occurred was considered by the apartment complex and its occupants to be part of the common grounds of the complex. Mary Katherine Burkett was manager of Riverwood in 1997 when this accident occurred. Ms. Burkett stated that the apartment property borders Deborah Drive and there is a grassy area between the apartments and the street. She stated that Riverwood's maintenance personnel walked the property frequently looking for holes and picking up trash. The grassy area next to the street was designated for walking dogs. Ms. Burkett stated that the landscape service mowed the property up to the curb of Deborah Drive. If problems were detected in the area along Deborah Drive, she would expect the apartment personnel to inform her of that. She stated that she walked in the area of the hole in question a week to 10 days prior to the accident and did not see anything out of the ordinary. She testified that after she learned of the accident, *375 she had plywood placed over the hole. She stated that she did not take this action earlier because she had no notice that the hole existed.
Gordon Surguine testified that he worked for the management company that owned Riverwood and that he frequently inspected the properties. He stated that he viewed all the grassy areas from curb to curb as late as April 17, 1997, and did not see a hole.
Terry Sant, the landscape contractor for Riverwood, testified that his company cut the grass at the apartment complex from fence to fence and curb to curb. He stated that people would frequently walk dogs in the grassy area where this accident occurred.
Elbert Costley testified that he worked at the apartment complex looking after the grounds. He stated that he walked the grassy area where the accident occurred daily. He also walked his dog in this area. He never saw the hole where the accident occurred prior to the accident. He said that if he had seen the hole, he would have reported it to Ms. Burkett, the manager.
The evidence clearly showed that Riverwood was exercising custody over the area where the accident occurred. The property was utilized by tenants for walking dogs and Riverwood employees inspected the area frequently for trash and holes. Further, the landscape company employed by Riverwood maintained the property up to the curb of Deborah Drive, including the area where this accident happened. The grassy area contained Riverwood's sign and there was nothing to indicate, like a sidewalk, a line of demarcation between what was actually owned by Riverwood versus the city. It is also uncontested that a defect existed which caused injury to the plaintiff. Even if this fact were contested, a hole, concealed by grass, located in an area in which pedestrian traffic is expected, would constitute an unreasonably dangerous condition and a defect. We believe that the tenants/residents of the Riverwood property had a reasonable expectation to traverse all common areas maintained by Riverwood safely. In this instance, Riverwood failed to reasonably maintain the area that it had custody over, causing an unreasonable risk of harm to the plaintiff, and resulting in his injury.
Not only did Riverwood have custody of the area where the defect existed, but there was evidence that Riverwood's ancestor-in-title actually was responsible for the construction of the drainage system that caused the defect. Barnes maintains that the apartment drainage system (which emptied into the City's catch basin on Deborah Drive) was leaking, and the leak caused erosion under the grass leading to the formation of the hole. Barnes also maintains that the drainage system was part of the leased premises. On appeal, Riverwood conceded that its ancestor-in-title had installed the underground drainage system which channeled the rainwater from the property into the City's catch basin.
Fred Vanderbrook, an engineer and owner of Vanderbrook Engineering for 19 years, was called by Riverwood at the trial. Vanderbrook explained that he primarily practices forensic engineering, examining various types of accidents caused by water and intrusion problems. Vanderbrook noted that there was a crack or a separation in the joint between the drain line (which was originally installed by Riverwood's ancestor-in-title) that ran into the catch basin. He opined that because of that separation, the surface water ran down, infiltrated the grass in the soil and carried soil with it. He further explained that over a period of time, the water continued to leak from the crack, carry soil, *376 and develop a subsurface cavity. According to Vanderbrook, this cavity eventually went all the way to or close to the surface-which resulted in the hole that Barnes stepped into.
John Maroney, a civil engineer and land surveyor, also testified at trial, stating that he was familiar with drainage facilities. Maroney personally examined the drainage pipes and catch basin that caused the hole Barnes fell in. He confirmed that the City's street catch basins were in place when the Riverwood property was developed. According to Maroney's testimony, he examined the catch basin where the hole developed. He noted that the piping tying into the catch basin that came from Riverwood had been repaired previously.
As a successor entity to Riverwood's original developer, Riverwood is liable for the obligations of that original developer as to the property  absent any contractual provisions which might have altered that condition. See La. C.C. art. 1765. Thus, any obligation of the original developer of the Riverwood property was transferred to Riverwood as a successor-in-title of the property. This would naturally include defects resulting in the drainage system installed on the Riverwood property by the original owner/developer.
So considering, Barnes showed that: the area where the hole formed was considered as a common area of the apartment complex and Riverwood had custody of that area; the hole was a defect caused by Riverwood's ancestor-in-title; and, the defect caused harm to the plaintiff. Under the theory of strict liability, Barnes does not have to show that the defendant knew or should have known of the existence of the defect. The evidence in this case establishes the elements of a claim for strict liability of a lessor pursuant to La. C.C. art. 2695, which was in effect at the time of the accident. The trial court and jury were manifestly erroneous in concluding otherwise. Accordingly, we reverse that portion of the trial court judgment finding that the plaintiff failed to show that Riverwood is strictly liable for the defect and the injury to the plaintiff.

Damages
Damages were not considered by the jury or trial court because they failed to find strict liability on the part of Riverwood. However, the record contains the plaintiff's evidence regarding the injuries received. On appeal, the plaintiff argues that this court should award $68,828.00 in medical bills and $250,000.00 in general damages. Based upon the complete record before us, we will award damages attributable to this accident.
"General damages" are those which may not be fixed with pecuniary exactitude, instead they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. Duncan v. Kansas City Southern Railway Co., XXXX-XXXX (La.10/30/00), 773 So.2d 670, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001). "Special damages" are those which either must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative certainty, such as the plaintiffs medical expenses incurred as a result of the tort. Moody v. Blanchard Place Apartments, 34,587 (La.App. 2d Cir.06/20/01), 793 So.2d 281, writ denied, 2001-2582 (La.12/14/01), 804 So.2d 647.
Before recovery can be granted for aggravation of a pre-existing condition, a causative link between the accident and the victim's current status must be established. The test for determining a causal relationship between an accident and subsequent *377 injuries, in a personal injury suit, is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. The plaintiff is aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from the accident if, before the accident, the injured person was in good health, but the disabling condition manifested itself shortly after the accident. Lamb v. Berry, 35,347 (La.App. 2d Cir.12/28/01), 803 So.2d 1084.
A claimant's recovery for medical expenses must be confined to those expenses related to the accident. In order to recover, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by the trauma suffered in the accident. Bassett v. Toys "R" Us Delaware, Inc., 36,434 (La.App. 2d Cir.12/30/02), 836 So.2d 465, writ denied, XXXX-XXXX (La.04/25/03), 842 So.2d 408.
Barnes claimed that he fell into the hole at issue here while walking on the common area maintained by Riverwood. At the time of the accident, he was off work due to a work-related shoulder injury. Barnes stated that he fell into the hole up to his buttocks. He sought treatment at Monroe Medical Clinic and was diagnosed with a broken leg. He was given a brace and crutches and was referred to Dr. Grant Dona, an orthopaedic surgeon. He claimed that he had pain in his shoulder from using crutches and swelling in his left knee. He also claimed that he developed low back problems due to stepping into the hole.
Dr. Mark Dollar, a family practice physician at Monroe Medical Clinic, testified that he saw the plaintiff on May 10, 1997, after the plaintiff fell into the hole. The plaintiff was diagnosed with a distal fibular fracture to the lower leg. He was placed in a short leg cast and was referred to Dr. Dona. The plaintiff had a long history of health problems and had previously been treated at Monroe Medical Clinic. He had a history of high blood pressure and chest pain. He suffered from a possible broken rib in an auto accident in March of 1996. In April 1996, the plaintiff injured a finger while working for a trash collection company. After the present injury, according to Dr. Dollar, the plaintiff returned three months later complaining of back pain and fluid in his legs.
Dr. Dona first saw the plaintiff in March 1997, before the present accident. The plaintiff was employed as a truck driver at that time and injured his shoulder while securing a load onto his truck. The shoulder injury was treated with injections and later with surgery. At the time the plaintiff first saw Dr. Dona, he reported a previous back and neck injury.
On May 13, 1997, Dr. Dona saw the plaintiff following the present accident, noting that he had a fractured fibula near the ankle joint. The plaintiff complained that his shoulder was aggravated from the use of crutches and said that his knee was swollen. He did not complain of back or neck pain. Dr. Dona noted that in December 1997, the plaintiff complained of pain radiating to his buttocks area. Dr. Dona opined that the plaintiff had polymyalgia rheumatica, a condition not associated with trauma. The plaintiff was referred to a rheumatologist, Dr. Nilofer Ashan, who did not think that the plaintiff had polymyalgia rheumatica. According to Dr. Ashan, the plaintiff had low back pain due to degenerative disc disease plus facet arthropathy and mild spinal stenosis.
In January 1998, the plaintiff saw Dr. Douglas Brown, an orthopaedic surgeon, for a second opinion. Dr. Brown noted *378 that the plaintiff had a degenerative spine condition and that he might be a candidate for back surgery. In February 1998, the plaintiff went to Dr. Brown's office without an appointment after purportedly sustaining injuries in an auto accident. Due to the difficulties that ensued, Dr. Brown refused to treat the plaintiff further.
In March 1998, Dr. Dona saw the plaintiff following a motor vehicle accident in which the plaintiff complained of severe neck and back pain. Dr. Dona observed that the plaintiff's ankle appeared to be doing well. In his deposition, Dr. Dona stated that if a patient had intermittent back pain and then had an injury and did not complain of an increase in back pain until three months later, he would not assume that the injury caused or accelerated the back pain.
The medical records of Dr. Stephen Michael Beene show that the plaintiff was treated for low back pain in November 1997. A CT scan of the spine showed mild midline disc herniations at C2 and C3 and a small herniation at L5-S1. An April 1998 report by Dr. Beene showed that the plaintiff had severe degenerative joint disease.
The plaintiff's medical records show that he was referred to Dr. John Ledbetter, a pain management physician, in December 1998. Dr. Ledbetter's notes indicate that the plaintiff had been experiencing pain in his back since he fell into the hole at Riverwood. Dr. Ledbetter suggested the possibility of treating the plaintiff with injections, but the record does not show if that was done.
The medical records of Dr. Richard Ballard show that in July and August 1999, the plaintiff had post-traumatic arthritis of the knee and was treated with injections.
The plaintiff's medical records show that in January 2000, the plaintiff went to the emergency room of a hospital in Mississippi complaining of left knee and heel pain. He stated that he had arthritis and that he had trouble with his knee following an automobile accident in which the emergency brake penetrated his knee. The plaintiff then consulted Dr. William H. Meyer in Mississippi for his knee pain. The plaintiff stated that he injured his knee at an early age and might have injured it while playing basketball in high school. Dr. Meyer observed that there were numerous scars on the knee but the plaintiff did not recall exactly what had happened. The plaintiff had knee surgery with Dr. Meyer in February 2000.
In May 2000, the plaintiff was seen by Dr. Alan R. Swayze, complaining that his knee continued to swell after the surgery. It appears that Dr. Swayze operated on the left knee again in May 2000. The records show that the plaintiff fell on the day of surgery and turned the knee. Also, the medical records show that Dr. Swayze treated the plaintiff extensively for hand pain and carpal tunnel syndrome unrelated to this accident.
The deposition of Dr. Robert McGuire, a spine surgeon, was introduced into evidence. Dr. McGuire first saw the plaintiff in June 2001, approximately four years after this accident. The plaintiff complained of a long history of leg and back pain related to the accident in this case. According to Dr. McGuire, the plaintiff had degenerative changes in his spine which required surgery in June 2002. Dr. McGuire stated that there was a possibility that the plaintiff would have had back problems without this accident. He stated that Dr. Dona would be in a better position to opine as to whether the accident contributed to the plaintiffs back problems.
In early 2002, the plaintiff was treated by Dr. Chris Benson, a rheumatologist, for polymyalgia rheumatica, lumbar disc disease *379 and degenerative arthritis in his right shoulder.
The record shows that the plaintiff had numerous injuries to his knee and back prior to and subsequent to the accident at issue here. The plaintiff also had a history of degenerative arthritis. The evidence in this case does not show that the plaintiff was free of pain and functioning well before this accident and then, after the accident, he began to have other physical difficulties. According to this record, the plaintiff suffered a broken leg in this accident and some mild exacerbation to his back, knee and shoulder. There is no showing that the present accident necessitated the back surgery or the two knee surgeries which occurred several years after this accident.
Therefore, we award the plaintiff medical expenses associated with the diagnosis and treatment of his injuries connected with this accident. We award $302.00 for Monroe Medical Clinic, $1,835.00 for Dr. Dona, $488.00 for Dr. Brown, $300.00 for Dr. Ledbetter, $459.00 for Dr. Ballard, and $714.00 for Dr. Beene, for a total award of medical expenses in the amount of $4,098.00. Although the plaintiff filed numerous bills for pharmaceuticals into the record, many of the prescriptions were from doctors not connected with this case. Because the plaintiff failed to clearly show which of these expenditures were related to the present accident, we do not make any award for medications.
Finally, we also award general damages to Barnes in the amount of $30,500.00. Cf., Medical Review Panel for Claim of Gertrude Young v. Bernice Community Rehabilitation Hosp., 38,402 (La. App. 2d Cir.04/07/04), 870 So.2d 467, writ denied, XXXX-XXXX (La.09/24/04), 882 So.2d 1132; Dowe v. Grady, 540 So.2d 1040 (La. App. 2d Cir.1989); McCardie v. Wal-Mart Stores, Inc., 522 So.2d 1319 (La.App. 2d Cir.1988); Kerrigan v. Imperial Fire and Cas. Ins. Co., 1999-604 (La.App. 3d Cir.11/03/99), 748 So.2d 67, writ denied, XXXX-XXXX (La.02/04/00), 754 So.2d 236.

CONCLUSION
For the reasons stated above, we conclude that the area where Barnes' accident occurred was regarded as the common area of the apartment complex over which Riverwood had custody and garde. So considering, we reverse that portion of the trial court judgment which failed to find Riverwood strictly liable to Barnes for injuries sustained when he fell into a hole on property in the custody of Riverwood. We render in favor of Ralph T. Barnes in the amount of $4,098.00 for medical expenses and $30,500.00 in general damages and assess all costs of this appeal to Riverwood Apartment Partnership.
REVERSED and RENDERED.
GASKINS, J., respectfully dissents for the reasons set forth in the original opinion.
NOTES
[1] In Barnes I, the facts were set forth based upon the record submitted to us on summary judgment. Those facts are somewhat in error. After the trial on the merits, a much clearer picture of the situation emerged. At the trial, the plaintiff testified that he dropped off his donation of canned goods near the mailbox area, then went to walk his daily two miles. He walked around the pool, cut through the parking lot, went across the grounds and into the grassy area. He then walked beside Deborah Drive and fell into the hole. This distinction is important because it shows that Riverwood did not incorporate this roadside into the area it used for tenant activities.
[2] The plaintiff has not appealed from the grant of the motion for involuntary dismissal filed by the City. Therefore, the issue of the City's liability is not before us.
[3] The substance of this article is now contained, in part in La. C.C. arts. 2696 and 2697 which were added by Acts 2004, No. 821 § 1, effective January 1, 2005.
[4] The substance of this article is now contained in part in La. C.C. art. 2674, which specifies that a lease of a thing that does not belong to the lessor may nevertheless be binding on the parties.
[5] Because the hole is located directly on the roadside, it was clearly not part of the leased premises.
[6] Negligence is the proper theory of recovery against a defendant having garde over property.
[1] Apparently, the plaintiff had recently injured his shoulder in a previous accident while working and was being treated for that injury through a worker's compensation claim at the time the present accident occurred.
[2] The plaintiff has not appealed from the grant of the motion for involuntary dismissal filed by the City. Therefore, the issue of the City's liability is not before us.
[3] The content of this article is now contained, in part in La. C.C. arts. 2696 and 2697 which were added by Acts 2004, No. 821 § 1, effective January 1, 2005.